[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13241

_____

D.C. Docket No. 8:14-cr-00191-CEH-JSS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DEMETRIUS SHARRON DAVIS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 20, 2017)

Before TJOFLAT, HULL and O'MALLEY,[*] Circuit Judges.

O'MALLEY, Circuit Judge:

_____

[*]Honorable Kathleen M. O'Malley, United States Circuit Judge for the Federal Circuit, sitting by designation.

Demetrius Sharron Davis ("Davis") appeals from a final judgment of the district court for the Middle District of Florida entered after a jury found him guilty of: (1) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count One); (2) witness tampering in violation of 18 U.S.C. § 1512(b)(1) (Count Two); and (3) obstruction of justice in violation of 18 U.S.C. § 1503 (Count Three). The district court sentenced Davis to a total of one hundred twenty-one (121) months imprisonment. Davis appeals his convictions for witness tampering and obstruction of justice. After review of the record, and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

### A.    Factual Background

According to the evidence at trial, on October 26, 2013, Tacarra Wilson, the mother of Davis's three daughters, arrived home from work to find Davis on her porch. Wilson testified that she has not lived with Davis since 2006, and that they have a "rocky" relationship. Davis asked to see the girls, and Wilson told him that they were at her sister's house. Wilson then went to her sister's house and did not return home until roughly midnight.

When Wilson returned home, Davis was sitting on her living room couch. He called Wilson a "slimy, nasty bitch," said "you know I want to see my girls," and accused Wilson of lying that she had been at her sister's house. Davis then

2

started an argument with Wilson and said he wanted to pawn the girls' jewelry so he could get some money.

During the argument, Davis pulled out a gun, "slammed it on the dresser," and told Wilson to "shut the fuck up." At that point, Wilson and Davis's nine-year-old daughter, D.D., entered the room and saw the gun. D.D. testified that Davis attempted to hide the gun from her, and that she saw Davis grab her mother. Wilson told D.D., "Go in your room; lock your door; and go in your closet and get your phone and call the police."

When the police officers arrived at Wilson's home, they heard Davis angrily yelling inside. They knocked on the door and Wilson opened it. The officers saw Davis sitting on the couch in the living room. One of the officers asked Davis to step outside, while the other spoke with Wilson inside the house. Wilson told the officer talking to her that Davis had a gun and that she saw him put it in the couch when he got up. The officer found a loaded silver pistol on the couch cushion where Davis had been sitting. The officers subsequently arrested Davis, who was a convicted felon, and thus could not legally possess a gun. Davis denied that the gun was his.

On May 13, 2014, a federal grand jury returned an indictment charging Davis with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The district court scheduled the case for trial in October

3

2014 for the sole count charged in the indictment.  Both Wilson and D.D. were scheduled to be witnesses at trial.

While Davis was detained prior to trial, he made several recorded calls to Wilson, who testified that she felt that Davis was trying to get her to change her story.  Davis asked Wilson about the "games you going to play" and told her, "[y]ou do your part; I'm going to do mine, too."

Davis also contacted D.D. directly.  On October 7, 2014, Davis called D.D. using another detainee's personal call identification number.  In relevant part, Davis and D.D. had the following exchanges:

> [Davis]:  That night that happened, did you—did you see me with anything?
>
> D.D.:  No, but I seen it. I seen it on the dresser.
>
> [Davis]:  Well, you don't need to get on the stand, 'cause that'll make Daddy go to jail for a long time just by you saying I was in the house with it.  You can't get on—you can't go.
>
> D.D.  I'll—
>
> [Davis]:  That won't help me.  That will help lock me up, so never mind.
>
>                    . . .
>
> [Davis]:  I called to see what you all was doing, but I want to talk to you.  But, uh—the people wanted you to—they wanted you to, but I don't want you to.  That will—that ain't good.
>
> D.D.:  You keep saying (inaudible)—

4

[Davis]: That's why I have to be in a way to discuss, but—I think you old enough to understand the decisions that you make and the stuff that come out your mouth. You should know what's wrong and what's right, what not to say and what to say; and I don't know—what you just told me, I asked you something just that simple, and don't you know that will have me locked up for the rest of the time—I'll be gone till you grown. You know, I'll be old when I get out just by you saying what you just said, which is not true.

. . .

[Davis]: All right, I don't even want to talk about it no more. (Inaudible) to see what you would say. But don't worry about it. Lucky I ain't using what's his name to call you, cause they'll use this conversation in court, and that shit will get me locked up. This shit have me locked away for a long time. But I know you lying though… I didn't do that in front of y'all. But don't worry about it.

D.D.: So I'm going to just tell people—

[Davis]: Don't. I'm going to tell the man no, I don't want you to talk, because you'll fuck me up and I'd be locked up for a long time just from the stuff that you'd be saying.

But I ain't mad at you, but I see you all chose sides and where you want me at. So, this is where you want me at. But I ain't mad at you, though. I ain't worried about it.

Well, I just wanted to hear your voices … but I can't use you now, so I guess, I'll—I just—I'll call y'all—well, …when I get out. If I beat it, I get out. If I don't, that means I'm going away for more than 15 years. So, I guess y'all will have somebody else new to call y'all daddy, I guess, but I don't know. I love y'all, and I'll get at y'all when I can.

D.D.: Okay.

5

Based on this phone call, a federal grand jury returned a superseding indictment on October 21, 2014, adding two new charges. Count Two of the superseding indictment charged Davis with tampering with a witness in violation of 18 U.S.C. §§ 1512(b)(1) and (j), and Count Three charged Davis with obstruction of justice in violation of 18 U.S.C. § 1503.

## B.    District Court Proceedings

### 1.    Pretrial Motions

Davis filed several pretrial motions that are relevant to this appeal. In particular, Davis filed: (1) a motion for a bill of particulars; (2) a motion to dismiss Counts Two and Three of the superseding indictment; and (3) a motion to continue the jury trial.

First, Davis moved for a bill of particulars to require the government to identify, in print, any statements he made that formed the basis for Counts Two and Three of the superseding indictment. The government opposed the motion on grounds that it already provided the requested information to defense counsel. The magistrate judge denied the motion, concluding that the superseding indictment set forth the alleged offenses in detail and that the government's disclosures adequately advised Davis of the allegations against him.

Davis also moved to dismiss Counts Two and Three of the superseding indictment as multiplicitous and vindictive. Davis requested that the district court

6

dismiss both counts or require the government to elect which count to take before a jury. With respect to multiplicity, Davis argued that the government charged him with two crimes based on identical acts. Davis also argued that the superseding indictment was vindictive because the government added the two new charges in retaliation for his refusal to cooperate with government officials who wanted him to testify against a defendant in a different case.

The district court conducted an evidentiary hearing on Davis's motion. At the hearing, Davis's father, Donald McLendon, testified that an agent wanted Davis to talk to him, but that Davis did not want to cooperate because his family might get hurt. The district court subsequently denied Davis's motion to dismiss. United States v. Davis, No. 8:14-cr-191, 2015 WL 500531 (M.D. Fla. Feb. 4, 2015). As to multiplicity, the court found that charges under 18 U.S.C. § 1503 and 18 U.S.C. § 1512(b)(1) are not multiplicitous because they require proof of different elements. In reaching this conclusion, the court noted that both the First and Eighth Circuits agree that the elements of these two charges are not the same. Id. at *1 (citing United States v. Risken, 788 F.2d 1361, 1369 (8th Cir. 1986); United States v. LeMoure, 474 F.3d 37, 43 (1st Cir. 2006)). Turning to vindictiveness, the court explained that there is no presumption of vindictiveness where, as here, the charges are added pre-trial. Based on the evidence adduced at the hearing, the court found no actual vindictiveness on the part of the prosecution.

7

At Davis's request, the district court continued the trial multiple times, and trial was finally scheduled for February 9, 2015. On January 29, 2015, Davis moved to continue the trial again, this time on grounds that the prosecution had just sent him discovery discs that included letters, videos, and seventeen hours of recorded phone calls that Davis made while he was in custody pending trial. The district court conducted an evidentiary hearing on the motion on February 3, 2015. Davis argued that, due to his mental health issues, he needed more time to review this new evidence to prepare for trial. His counsel confirmed, however, that Davis participated in each of the calls at issue. The government opposed the motion to continue because: (1) defense counsel had equivalent access to the recordings and actually had provided some of them to the government; and (2) its witnesses had to prepare twice for trial already, only to have those trial dates moved.

The district court then asked the government to identify which of the new calls it intended to use at trial. The prosecutor identified two segments of a single call, one that was two minutes long, and another that was 45 seconds long. The district court denied Davis's requested continuance, finding that adequate time remained for defense counsel to review the new discovery, particularly given that Davis was a participant in the conversations. The court also pointed out that the discovery had been available to defense counsel before the production about which Davis complained.

8

2.    Trial

The district court conducted a three-day jury trial, beginning on February 9, 2015.  During jury selection, because he identified only two of the 37 jurors in the venire as African American, Davis argued that the venire was unfairly discriminatory, allegedly in violation of the Fifth, Sixth, and Fourteenth Amendments as well as the Jury Selection and Service Act, 28 U.S.C. § 1861.  The district court denied the motion, finding that Davis failed to make a prima facie showing that the jury venire did not reflect a fair cross-section of the community.

The district court also overruled Davis's motion to strike Juror 14 for cause.  During voir dire, Juror 14 indicated that his son was a law enforcement officer, but stated that it would not impact his ability to serve as a fair and impartial juror.  Later, however, Juror 14 told the court that he would probably give a law enforcement officer's testimony more weight.  When the government questioned him further, Juror 14 stated that he would have no problem finding that a law enforcement officer was not being truthful, and that he would listen to each witness impartially and follow the judge's instructions.  The district court overruled Davis's objection to Juror 14, and Davis declined to exercise a peremptory challenge.

At trial, Davis moved to admit a letter Wilson wrote to him expressing anger over his relationships with other women.  The district court excluded the letter as

9

hearsay and as lacking adequate foundation.  The court advised Davis's counsel that he could use the letter on cross-examination of Wilson for impeachment purposes, but could not have Wilson read the letter into the record.  Wilson subsequently testified, consistent with the contents of the letter, that she was angry with Davis at the time she wrote it.

After he rested his case, Davis moved for judgment of acquittal on all three counts of the superseding indictment.  The district court denied the motion.  As to Count One—possession of a firearm after having been convicted of a felony—the court pointed out that the parties had stipulated that Davis was a convicted felon on the date in question.  The court explained that: (1) "at best, there is some conflicting evidence" regarding whether Davis "knowingly possessed the firearm, either actual possession or constructive possession;" and (2) "when there is conflicting evidence, the issue belongs to the trier of fact."  On Count Two— witness tampering—the district court found that a jury could reasonably conclude that Davis attempted to corruptly persuade D.D. based on the audiotape of Davis's conversation with her.  On Count Three—obstruction of justice—the district court stated that, based on that conversation, a reasonable juror could conclude that "Davis knowingly and corruptly tried to influence, obstruct, or impede the due administration of justice in the judicial proceeding."  The court thus denied Davis's

10

motion, finding that the evidence was sufficient to sustain a conviction on each of the counts of the indictment.

3.    Jury Verdict and Sentencing

After a three-day trial, the jury found Davis guilty on all three charges. The district court entered judgment on July 2, 2015. The court subsequently sentenced Davis to 121 months imprisonment, which was at the low-end of the sentencing guidelines. Defense counsel indicated that Davis had no objections to that sentence.

Davis now appeals his obstruction of justice and witness tampering convictions. Although there is some debate about whether Davis's notice of appeal was timely, the government does not raise timeliness as a reason not to review the case. The parties agree that we have jurisdiction over Davis's appeal under 28 U.S.C. § 1291. See United States v. Lopez, 562 F.3d 1309, 1313 (11th Cir. 2009) ("Because the deadline in Rule 4(b) for filing a notice of appeal in a criminal case is not grounded in a federal statute, we hold that it is not jurisdictional.").

## II.    DISCUSSION

Davis raises several issues on appeal, challenging numerous pretrial and trial decisions, as well as the sufficiency of the evidence. Davis argues that the district court erred when it concluded that the witness tampering and obstruction of justice charges were not multiplicitous and vindictive, and that the evidence at trial was

11

insufficient to convict him under either charge. Davis also argues that the district court abused its discretion or otherwise erred when it: (1) denied his motion for a bill of particulars; (2) denied him a continuance before trial; (3) denied his motion to strike the venire panel; (4) overruled his objection to Juror 14; and (5) excluded the letter from his ex-girlfriend.[1] We address each argument in turn.

## A.   Denial of Davis's Motion to Dismiss the Superseding Indictment

Davis argues that the district court erred when it denied his motion to dismiss the superseding indictment on multiplicity and vindictiveness grounds. As explained below, we disagree.

### 1.   Multiplicity

"An indictment is multiplicitous if it charges a single offense in more than one count." United States v. Woods, 684 F.3d 1045, 1060 (11th Cir. 2012). A multiplicitous indictment "violates double jeopardy principles by giving the jury more than one opportunity to convict the defendant for the same offense." United States v. Jones, 601 F.3d 1247, 1258 (11th Cir. 2010).

"Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended

---

[1] Davis also asks this court to "confirm" the reasonableness of his sentence. As the government points out, however, Davis does not challenge his sentence on appeal. Indeed, he concedes that the court "correctly calculated his guidelines range, considered the 18 U.S.C. § 3553(a) factors, sentenced him within the maximum penalties at the low end of his guideline range, and understood it had discretion to depart or vary downward below that range." Appellant Br. 66-67. Because Davis does not challenge any part of his sentence, we need not address this issue.

12

that each violation be a separate offense." United States v. Smith, 532 F.3d 1125, 1128 (11th Cir. 2008) (quoting Williams v. Singletary, 78 F.3d 1510, 1512 (11th Cir. 1996)).  If the legislative intent is unclear, we apply the "same elements" test set forth in Blockburger v. United States, 284 U.S. 299, 304 (1932).  We have recognized that the Blockburger test "is one of statutory interpretation in which we examine the elements of each offense to determine whether Congress intended to authorize cumulative punishments."  United States v. Williams, 527 F.3d 1235, 1240 (11th Cir. 2008).  Under that test, two offenses are different for double jeopardy purposes "if each 'requires proof of an additional fact which the other does not.'"  Smith, 532 F.3d at 1128 (quoting Cole v. United States Dep't of Agric., 133 F.3d 803, 805 (11th Cir. 1998)).  In other words, "if an offense requires proof of an element that the other offense does not, we need look no further in determining that the prosecution of both offenses does not offend the Fifth Amendment."  United States v. Hassoun, 476 F.3d 1181, 1186 (11th Cir. 2007).  We review a multiplicity decision for an abuse of discretion, but review the appellant's double jeopardy arguments de novo.  United States v. Ford, 784 F.3d 1386, 1392 (11th Cir. 2015).

> a.    Legislative History

Davis contends that the multiplicity analysis here turns on legislative intent and that Congress did not intend simultaneous prosecution under 18 U.S.C.

13

§§ 1503 and 1512.  Our review begins with an inquiry into whether Congress intended to authorize cumulative punishment when it enacted the criminal statutes at issue.  Hassoun, 476 F.3d at 1185.  To ascertain Congress's intent, we look to the language of the statutes themselves and to the legislative history.  Id.

Before 1982, 18 U.S.C. § 1503 was entitled "Influencing or injuring officer, juror or witness generally," and prohibited influencing or intimidating "any witness . . . grand or petit juror, or [court] officer" in the discharge of his duty.  United States v. Wesley, 748 F.2d 962, 963 (5th Cir. 1984).  Section 1503 also included a residual clause prohibiting anyone from obstructing or attempting to obstruct the "due administration of justice."  Id.

In 1982, Congress enacted the Victim and Witness Protection Act ("VWPA") and removed from § 1503 all references to witnesses.  At the same time, Congress enacted 18 U.S.C. § 1512, which focuses specifically on "tampering with a witness, victim or an informant."  Victim Witness Protection Act, Pub. L. No. 97-291, §§ 4(a), (c), 96 Stat. 1248, 1249-1253 (Oct. 12, 1982).[2] Congress did not remove the residual clause of § 1503 in its 1982 amendments, however, and courts have read that provision to encompass the corrupt persuasion of witnesses.  See United States v. LeMoure, 474 F.3d 37, 41 (1st Cir. 2007).

---

[2] When § 1512 was enacted in 1982, it dealt only with the use or threat of force against a witness.  As discussed below, Congress added a ban on corrupt persuasion in a 1988 amendment. Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7029(c) (1988).

14

As relevant here, the "omnibus" or "residual" clause of § 1503 makes it unlawful to "corruptly or by threats or force, . . . influence[], obstruct[], or impede[], or endeavor[] to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503(a). Section 1512(b)(1) makes it unlawful to "knowingly use[] intimidation, threaten[], or corruptly persuade[] another person, or attempt[] to do so, or engage[] in misleading conduct toward another person, with intent to – (1) influence, delay, or prevent the testimony of any person in an official proceeding." 18 U.S.C. § 1512(b)(1).

Although Davis raised the issue of multiplicity in his motion to dismiss, he did not make any arguments to the district court regarding legislative history and did not raise the issue in his opening brief on appeal. In his reply brief, however, Davis argues that Congress intended that intimidation and witness tampering would only be prosecuted under § 1512—not § 1503. In support of this proposition, Davis relies on two Second Circuit decisions: United States v. Hernandez, 730 F.2d 895 (2d Cir. 1984), and United States v. Masterpol, 940 F.2d 760 (2d Cir. 1991).

In Hernandez, the Second Circuit held that, by enacting the VWPA in 1982, "Congress intended that intimidation and harassment of witnesses should thenceforth be prosecuted under § 1512 and no longer fall under § 1503." 730 F.2d at 899. In reaching this conclusion, the court explained that Congress

15

removed from § 1503 all references to witnesses and enacted § 1512 to provide "more extensive protection for witnesses and others." Id. at 898. For example, while § 1503 "proscribed influencing witnesses by corruption, threats, or force, § 1512 extends as well to intimidation and harassment, thereby establishing a lower threshold of criminal activity." Id.

In Masterpol, the Second Circuit reaffirmed Hernandez and rejected the government's attempts to read it narrowly. Masterpol, 940 F.2d at 763. The government argued that, after Hernandez, noncoercive witness contacts, "including corrupt efforts to urge witnesses to make false statements," were still covered by § 1503's omnibus clause. Id. (noting that the government's "limiting construction of Hernandez has been accepted by other circuits and by district courts in this Circuit"). The Second Circuit found that Congress's 1988 amendment to § 1512(b), which added "corruptly persuades" to the list of prohibited acts, was evidence that Congress intended to remove witnesses entirely from the scope of § 1503. Id.

The majority of circuits—including this one—disagree with the Second Circuit and have held that the omnibus clause of § 1503 continues to cover witness tampering. United States v. Moody, 977 F.2d 1420, 1424 (11th Cir. 1992) (concluding that § 1503 "is broad enough to cover such proscribed acts against witnesses"); United States v. Kenny, 973 F.2d 339, 342 (4th Cir. 1992) ("The fact

16

that § 1512 more specifically addresses improper conduct involving a witness does not preclude application of § 1503."); United States v. Branch, 850 F.2d 1080, 1082 (5th Cir. 1988) ("The general obstruction of justice statute, 18 U.S.C. § 1503, was amended in 1982 and all reference to 'witnesses' was deleted.  On the face of the language remaining in the statute, however, threatening a witness is covered."); United States v. Tackett, 113 F.3d 603, 607 (6th Cir. 1997) ("We agree with the majority of these courts that § 1503 continues to prohibit witness tampering."); United States v. Rovetuso, 768 F.2d 809, 824 (7th Cir. 1985) ("[I]t is entirely proper to charge defendants under § 1503 with interfering with the due administration of justice when the conduct of the defendant relates to tampering with a witness."); United States v. Risken, 788 F.2d 1361, 1367-68 (8th Cir. 1986) (finding that § 1512 was intended to provide greater protection to witnesses, but that witness tampering is also punishable under § 1503); United States v. Lester, 749 F.2d 1288, 1295 (9th Cir. 1984) (finding that Congress did not intend "to restrict the coverage of section 1503 over imaginative methods of witness tampering not set forth in section 1512").

In Moody, this court specifically held that § 1503 is broad enough to encompass witness tampering.  977 F.2d at 1424.  We explained that the 1982 amendment to § 1503 left untouched the omnibus clause which makes it a criminal offense to "corruptly or by threats or force . . . influence[], obstruct[], or impede[],

17

or endeavor[] to influence, obstruct, or impede, the due administration of justice." Id. And, we expressly joined "the majority of circuits in holding that § 1512 is not the exclusive vehicle for prosecution for witness tampering." Id. (collecting cases). In doing so, we rejected the Second Circuit's approach in both Hernandez and Masterpol. Id. Pursuant to our decision in Moody, therefore, witness-related conduct remains punishable under the omnibus clause of § 1503.

At oral argument, counsel for Davis suggested that these cases—including Moody—are distinguishable on grounds that many of them pre-date or otherwise do not discuss the 1988 amendment of 18 U.S.C. § 1512 to include corrupt persuasion within the conduct proscribed by that section. Davis maintains that this amendment provides further evidence that Congress intended to remove witness tampering from § 1503 by addressing a perceived gap in the coverage of § 1512. In other words, that by broadening the scope of § 1512, Congress removed any need for residual coverage under § 1503.

But our sister circuits have held that witness tampering may be charged under § 1503, even after the 1988 amendment. Kenny, 973 F.2d at 343 (rejecting the argument that the 1988 amendment of § 1512 was "a clear indication" that § 1512 "was the sole statute covering the corruption of witnesses"); Tackett, 113 F.3d at 610-11 (discussing the legislative history of the 1988 amendment and concluding that the omnibus clause of § 1503 continues to prohibit witness

18

tampering); <u>United States v. Maloney</u>, 71 F.3d 645, 659 (7th Cir. 1995) (finding that witness tampering falls under both §§ 1503 and 1512, even after the 1988 amendments); <u>United States v. Ladum</u>, 141 F.3d 1328, 1338 (9th Cir. 1998) (discussing the legislative history of the 1988 amendment and concluding that the "amendment of § 1512 did not affect the reach of § 1503" and that "the omnibus clause of § 1503 continues to prohibit witness tampering").

In <u>Kenny</u>, for example, the Fourth Circuit acknowledged that the 1988 amendment was passed to cover a perceived gap in the statute for acts which did not involve coercive conduct. 973 F.2d at 343. As noted, Congress added the phrase "or corruptly persuades" to cover "noncoercive witness tampering." <u>Id.</u> The court found, however, that the 1988 amendment made no change to the omnibus clause of 18 U.S.C. § 1503, and therefore does not "preclude its general application to acts that obstruct justice." <u>Id.</u>

Similarly, in <u>LeMoure</u>, the First Circuit examined the statutory text and the legislative history and rejected the Second Circuit's "restrictive view." 474 F.3d at 40-41. In relevant part, the court noted that, when Congress amended § 1512 to cover non-coercive witness tampering, Senator Biden explained that the amendment was:

> intended . . . merely to include in section 1512 the same non-coercive influence that <u>was</u> (and is) found in section 1503. It would permit prosecution of such conduct in the Second Circuit, where it is not now permitted, and would <u>allow</u> such prosecutions in other circuits to be

19

brought under section 1512 rather than under the catch-all provision
of section 1503.

Id. at 41 (quoting 134 Cong. Rec. S17,369 (1988) (statement of Sen. Biden)).

Given this legislative history, and because Congress left § 1503's omnibus clause

intact, the court concluded that § 1503 "continues to cover witness tampering." Id.

at 40.

We agree, and hold that witness tampering remains punishable under § 1503.

Although we did not discuss the 1988 amendment in Moody, we did expressly

reject the Second Circuit's decision in Masterpol. Moody, 977 F.2d at 1424 (citing

Hernandez and Masterpol and stating that "we expressly reject the position taken

by the Second Circuit"). In doing so, we noted that Masterpol construed the 1988

amendment to § 1512 as evidence of Congress's intent to remove witnesses from

§ 1503. Id. By disagreeing with that approach, we considered and rejected the

precise argument Davis now asserts. Consistent with our decision in Moody, we

conclude that the residual clause of § 1503 was not amended in 1988, and remains

broad enough to cover proscribed acts against witnesses.

Having determined that Congress intended to authorize prosecution of

witness-related conduct under either statute, we turn to the parties' primary debate

on appeal: whether cumulative punishments under 18 U.S.C. § 1503's omnibus

clause and 18 U.S.C. § 1512(b)(1)'s witness tampering provision satisfy the

Blockburger test.

20

b.    <u>Blockburger</u> Test

On appeal, Davis argues that the obstruction of justice and witness tampering charges were multiplicitous because they "have essentially identical elements."  Appellant Br. 54.  The government responds that 18 U.S.C. § 1503 and 18 U.S.C. § 1512(b)(1) protect different interests and therefore focus on different elements.  The government's argument is well-taken.

To convict a defendant under 18 U.S.C. § 1503's omnibus clause, the government must show that he "(1) corruptly or by threats, (2) endeavored, (3) to influence, obstruct, or impede the due administration of justice."  <u>United States v. Silverman</u>, 745 F.2d 1386, 1392 (11th Cir. 1984) (citation omitted); <u>United States v. Brand</u>, 775 F.2d 1460, 1465 (11th Cir. 1985) (same).  To convict a defendant of witness tampering under 18 U.S.C. § 1512(b)(1), the government must prove that: (1) the defendant knowingly used intimidation, physical force, or threats against another person; and (2) this conduct was intended to "influence, delay, or prevent the testimony of any person in an official proceeding."  18 U.S.C. § 1512(b)(1); <u>United States v. Lara</u>, 181 F.3d 183, 200 (1st Cir. 1999).

Although we have not addressed the precise question of whether prosecuting a defendant for obstruction of justice under 18 U.S.C. § 1503 and for witness tampering under 18 U.S.C. § 1512(b)(1) is multiplicitous, our sister circuits have concluded that they are not because they require proof of different elements.  <u>See</u>

21

Risken, 788 F.2d at 1369 ("We also hold that appellant's conviction under both § 1512 and § 1503 is not multiplicious in violation of the double jeopardy clause of the fifth amendment."); United States v. LeMoure, 474 F.3d 37, 43 (1st Cir. 2007) (rejecting a multiplicity challenge on grounds that § 1503 and § 1512(b)(1) are different offenses under Blockburger); United States v. Wesley, 748 F.2d 962, 963-65 (5th Cir. 1984) (rejecting a multiplicity challenge as contrary to the "plain words of the statute" and as a "misinterpret[ation of] the legislative history behind § 1512").

We agree.  We have explained that § 1503 "forbids interferences with the due administration of justice, i.e., judicial procedure."  United States v. Brenson, 104 F.3d 1267, 1275 (11th Cir. 1997) (quoting Silverman, 745 F.2d at 1393). Consistent with this approach, other circuits have found that "[p]roof of a violation of  § 1503 requires proof of the defendant's knowledge of a pending judicial proceeding, which is expressly not an element of a violation of § 1512."  Risken, 788 F.2d at 1369; LeMoure, 474 F.3d at 43 ("[S]ection 1503 as read by the Supreme Court requires an attempt to obstruct a pending judicial proceeding, . . . no such requirement of a pending proceeding exists in section 1512."); United States v. Matthews, 505 F.3d 698, 708 n.3 (7th Cir. 2007) (same).  Indeed, § 1512(f) provides that, for purposes of this section, "an official proceeding need not be pending or about to be instituted at the time of the offense."  18 U.S.C.

22

§ 1512(f)(1).  Other circuits have also found that, although § 1512(b)(1) "requires proof that one intend to 'influence, delay, or prevent . . . testimony of any person,'" § 1503 does not.  LeMoure, 474 F.3d at 43 (quoting § 1512(b)(1)).  The elements of the two charges are, thus, not the same.

Davis argues that this analysis is "not sound" and that the charges are the same because § 1512 "implicitly requires proof of knowledge of a pending judicial proceeding."  Appellant Br. 54-55.  Davis cites no authority for this proposition, and his "implicit requirement" approach is inconsistent with Blockburger.  As we have explained, the Blockburger test requires that we "examine only the elements themselves; if an offense requires proof of an element that the other offense does not, we need look no further in determining that the prosecution of both offenses does not offend the Fifth Amendment."  Hassoun, 476 F.3d at 1186.

Applying this framework, we conclude that the witness tampering and obstruction of justice charges in the superseding indictment were not multiplicitous.  "Each charge is proscribed by a separate statutory provision and the facts necessary to one are not necessary to the other."  United States v. Maggitt, 784 F.2d 590, 599 (5th Cir. 1986).  Accordingly, Davis's prosecution and subsequent conviction on both counts was not multiplicitous and did not constitute double jeopardy.

2.    Vindictiveness

Next, Davis argues that the addition of the witness tampering and obstruction of justice charges were vindictive. According to Davis, the prosecutor added the new charges in retaliation for his refusal to cooperate with government officials to testify against a defendant in another case who was charged with racketeering and murder. Although Davis concedes that the district court correctly found no presumption of vindictiveness here because the government filed the superseding indictment prior to trial, he maintains that the court should have found that the new charges were actually vindictive. We review a district court's decision denying a motion to dismiss an indictment as vindictive for abuse of discretion. United States v. Kendrick, 682 F.3d 974, 981 (11th Cir. 2012).

"A prosecutor may seek a superseding indictment at any time prior to a trial on the merits, . . . so long as the purpose is not to harass the defendant." United States v. Barner, 441 F.3d 1310, 1315 (11th Cir. 2006) (citation omitted). As a general rule, if a prosecutor has probable cause to believe that a defendant committed a crime, "the courts have no authority to interfere with a prosecutor's decision to prosecute." Id. A superseding indictment adding new charges that increases the potential penalty "would violate due process if the prosecutor obtained the new charges out of vindictiveness." Id. In this context, vindictiveness "means the desire to punish a person for exercising his rights." Id.

24

We have explained that a "prosecutor's charging decision does not impose an improper 'penalty' on a defendant unless it results from the defendant's exercise of a protected legal right, as opposed to the prosecutor's normal assessment of the social interests to be vindicated by the prosecution." United States v. Taylor, 749 F.2d 1511, 1514 (11th Cir. 1985) (per curiam).

Here, the government added two new counts in the superseding indictment—Counts Two and Three—based on Davis's conduct that occurred after the initial indictment, but before trial. The Supreme Court has recognized that the addition of charges while preparing for trial generally does not give rise to a presumption of vindictiveness because, "[i]n the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution." United States v. Goodwin, 457 U.S. 368, 381 (1982). In these circumstances, where the charges were added pre-trial, a defendant must prove actual vindictiveness by showing "objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." Id. at 384.

After conducting an evidentiary hearing, the district court concluded that Davis failed to prove actual vindictiveness. Davis, 2015 WL 500531, at *2. In reaching this conclusion, the court found that, even after it added Counts Two and Three to the superseding indictment, the government remained interested in

25

Davis's cooperation.  The court further found that the violations alleged in Counts Two and Three post-dated the original indictment, "which objectively rebuts any claim of vindictiveness."  Id.

Davis argues that the new charges were added to punish him for not cooperating and that he had a protected right not to cooperate.  Davis cites no authority suggesting that the government cannot use the threat of prosecution to encourage cooperation, and courts that have considered this issue have concluded otherwise.  See United States v. Williams, 47 F.3d 658, 662 (4th Cir. 1995) ("A prosecutor's threat to bring a more severe indictment if the defendant refuses to cooperate does not amount to vindictiveness as long as the defendant, should he refuse to cooperate, is not treated worse than he would have been if no plea bargain had been offered."); United States v. Long, 823 F.2d 1209, 1211 (7th Cir. 1987) (noting that the government may penalize a refusal to cooperate and that "it is difficult to see how the mere allegation that Long was disadvantaged by refusing to cooperate could, without more, suffice to show 'vindictiveness'"); United States v. Boss, 652 F.2d 36, 38 (10th Cir. 1981) ("When the party refuses to cooperate, prosecution, based upon probable cause to believe the defendant committed the crime charged, does not present [a] likelihood of vindictiveness").

In any event, as noted, the district court found that the new charges were added based on Davis's post-indictment conduct, which rebutted any claim that the

26

addition of the charges was vindictive.  See United States v. Suarez, 263 F.3d 468, 480 (6th Cir. 2001) ("If the prosecution can show that the additional charges were not brought earlier because they were based on new evidence, it will successfully rebut a showing of vindictiveness.").  We find no error in that conclusion, and Davis does not challenge it on appeal.  Accordingly, the district court did not abuse its discretion in rejecting Davis's vindictiveness claim.

## B.    Sufficiency of the Evidence

Davis asserts that, even if he could be charged under both § 1503 and § 1512, there was insufficient evidence to support either conviction.  We disagree.

We review de novo whether the evidence was sufficient to sustain a criminal conviction.  United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009).  In doing so, "we view the evidence in the light most favorable to the government and draw all reasonable inferences and credibility determinations in favor of the jury's verdict."  Kendrick, 682 F.3d at 981.  "[T]he ultimate question is whether a reasonable trier of fact could have found guilt beyond a reasonable doubt."  Id. at 984.

The evidence presented at trial was sufficient to enable the jury to find Davis guilty of obstruction of justice and witness tampering beyond a reasonable doubt. The transcript of Davis's call to D.D. on October 7, 2014 demonstrated that Davis corruptly tried to influence his pending trial by using persuasion to prevent witness

27

testimony in violation of both 18 U.S.C. § 1503 and § 1512(b)(1).  During that call,

Davis asked D.D. what she planned to tell the jury.  When D.D. said that she would

say that she saw the firearm, Davis told her: "you don't need to get on the stand,

'cause that'll make Daddy go to jail for a long time" and "I don't want you to."

When D.D. started to say that she was "going to just tell people…"  Davis cut her

off, saying: "Don't . . . I don't want you to talk, because you'll fuck me up."

On appeal, Davis argues that, because D.D. testified that she did not feel

threatened by Davis, and told the jury that she did not feel that her father "was

pressing her to lie or not testify," the evidence against him was "fatally

undermined."  Appellant Br. 65-66.  But the relevant inquiry is not whether D.D.

actually felt threatened.  Instead, the focus of § 1503 is on the defendant's "specific

intent" to "do some act or acts which tend to impede or influence, obstruct, or

impede the due administration of justice."  Knight v. United States, 310 F.2d 305,

307 (5th Cir. 1962).[3]  It is well established that a § 1503 offense "is complete when

one corruptly endeavors to obstruct or impede the due administration of justice; the

prosecution need not prove that the due administration of justice was actually

obstructed or impeded."  Silverman, 745 F.2d at 1395 (emphasis in original).

Section 1512(b)(1) prohibits the use of intimidation, threats, or corrupt

persuasion of a person and the "attempt[] to do so."  18 U.S.C. § 1512(b)(1).  We

---

[3] This court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

have said that "whether a communication is a threat is a question of fact to be left to the jury." United States v. Matthews, 431 F.3d 1296, 1310 (11th Cir. 2005) (quoting United States v. Taylor, 972 F.2d 1247, 1252 (11th Cir. 1992)). "If a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue should go to the jury." Id. (citation omitted).

Based on the October 7, 2014 phone call, a reasonable jury could find that Davis endeavored to impede the administration of justice by attempting to influence D.D. not to speak with law enforcement and not to testify. Regardless of whether D.D. actually felt threatened, the jury was free to conclude that Davis knowingly used corrupt persuasion that was intended to prevent D.D.'s testimony. Viewed in the light most favorable to the government, we conclude that the evidence was sufficient to support the jury's verdict as to both obstruction of justice and witness tampering.

## C.    Motion for a Bill of Particulars

Davis argues that the district court erred in denying his motion for a bill of particulars. We review the district court's denial of a motion for a bill of particulars for abuse of discretion. United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981). To show an abuse of discretion, a defendant must establish that he actually was surprised at trial and that the denial of the request for a bill of particulars prejudiced his substantial rights. Id.

29

The purpose of a bill of particulars is "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Warren, 772 F.2d 827, 837 (11th Cir. 1985). A bill of particulars may not be used "to obtain a detailed disclosure of the government's evidence prior to trial." United States v. Perez, 489 F.2d 51, 71 (5th Cir. 1973). Importantly, a defendant is not entitled to a bill of particulars where the information sought has already been provided by other sources, such as the indictment and discovery. United States v. Martell, 906 F.2d 555, 558 (11th Cir. 1990).

On appeal, Davis argues that the district court abused its discretion when it denied his request for a bill of particulars and that he was "actually surprised at trial." Appellant Br. 52. The government responds that the superseding indictment specifically informed Davis of the charges against him under 18 U.S.C. §§ 1503 and 1512(b)(1) and identified the conduct that violated those provisions: Davis's call to D.D. on October 7, 2014.

The district court did not abuse its discretion in denying Davis's motion for a bill of particulars because the superseding indictment provided the specific information sought. Count Two of the superseding indictment provided that, on or about October 7, 2014, Davis "encouraged witness D.D. not to speak with federal

30

law enforcement officers or prosecutors regarding the prosecution of the defendant, and attempted to prevent and dissuade witness D.D. from testifying at the trial of the defendant." Likewise, Count Three provided that, on or about October 7, 2014, Davis "knowingly and corruptly endeavor[ed] to influence, obstruct, and impede the due administration of justice in a judicial proceeding" by knowingly encouraging witness D.D. to not speak with federal law enforcement officers or prosecutors regarding the prosecution of the defendant, and endeavor[ed] to prevent and dissuade witness D.D. from testifying at the trial of the defendant." Accordingly, Davis had knowledge of the specific conduct that gave rise to these charges.

Davis argues that he was surprised at trial when the government introduced additional jail calls beyond the October 7, 2014 call. But Davis concedes that those calls were included in the pretrial discovery the government provided, were identified at the hearing on Davis's motion for a continuance, and were conversations in which he participated. For these reasons, we conclude that the district court did not abuse its discretion in denying Davis's motion.

## D.    Denial of Davis's Motion for a Continuance

Next, Davis argues that the district court erred in denying his request for a continuance before trial. "Denial of a continuance is within the broad discretion of the district court and will not be overturned unless the denial is arbitrary or

31

unreasonable." Fowler v. Jones, 899 F.2d 1088, 1093-94 (11th Cir. 1990).  In reviewing a denial of a request for a continuance under the abuse of discretion standard, the Eleventh Circuit considers several factors, including the "diligence of the party requesting the continuance," judicial economy, fairness to the parties, including their witnesses, and the "extent to which appellant might have suffered harm as a result of the denial." Id. at 1094.

Davis argues that it was arbitrary or unreasonable for the district court to deny his requested extension because: (1) the government disclosed four new discovery discs, which included dozens of phone calls that required days of review; and (2) he was diagnosed with mental disabilities that affected his ability to review that discovery and prepare for trial.  As to the first issue, the district court made specific fact findings that Davis does not challenge on appeal.  The court found that Davis participated in the phone calls, the calls were equally available to his defense team, and the government significantly narrowed the relevant portions of the discs disclosed to just two segments of a single call.  As to the second issue, the district court considered Davis's claims regarding his mental health, and found that Davis failed to explain how his mental health rendered him unable to review the portions of the phone calls at issue.

We conclude that the district court did not abuse its discretion in denying Davis's motion for a continuance.  Because the recordings at issue were equally

32

available to defense counsel, Davis's lack of diligence weighed against him.

Although the government disclosed four new discovery discs, it identified the only

portions of those discs that it intended to use at trial.  There also was evidence that

another continuance would inconvenience the government's witnesses.  Most

importantly, however, Davis has failed to show that he was prejudiced or otherwise

suffered any harm as a result of the court's decision denying a continuance. Again,

we find that the trial court acted within its broad discretion in proceeding to trial as

scheduled.

**E.    Denial of Davis's Objection to the Venire**

Davis next challenges the district court's decision overruling his objection to

the composition of the venire.  Specifically, Davis argues that the jury selection

process violated his Equal Protection rights under the Fifth Amendment and the

Jury Selection and Service Act, 28 U.S.C. § 1861 ("JSSA") because the jury venire

had an insufficient number of African Americans.  The district court found that

Davis failed to establish a prima facie case that the jury venire did not reflect a fair

cross-section of the community.  "We review de novo constitutional challenges to

jury selection processes."  United States v. Grisham, 63 F.3d 1074, 1077 (11th Cir.

1983).

At the outset, Davis concedes that he failed to set forth a prima facie case

under the Sixth Amendment, which "guarantees a criminal defendant the right to

33

be indicted and tried by juries drawn from a fair cross-section of the community."

Id. at 1078.  To establish a prima facie violation of the fair cross-section

requirement, a defendant must show: "(1) that the group alleged to be excluded is a

distinctive group in the community, (2) that representation of the group in venires

is not fair and reasonable in relation to the number of such persons in the

community, and (3) that the underrepresentation is due to systemic exclusion of the

group in the jury-selection process."  Id.  "To analyze whether African Americans

were fairly and reasonably represented in the jury pool, we compare the difference

between the percentage of African Americans in the population eligible for jury

service and the percentage of African Americans in the pool."  United States v.

Carmichael, 560 F.3d 1270, 1280 (11th Cir. 2009).  Under Eleventh Circuit

precedent, "[i]f the absolute disparity between these two percentages is ten percent

or less, the second element is not satisfied."  Id. (quoting Grisham, 63 F.3d at

1078-79)).

Because the census showed that the percentage of African Americans

eligible for jury service was 12.1 percent, and the venire was 5.4 percent African

American, Davis acknowledges that the absolute disparity is less than 10 percent.

Davis further admits that he failed "to marshal 'evidence showing that the under-

representation in this case was due to systematic exclusion of African-

34

Americans.'"  Appellant Br. 59, n.2 (quoting United States v. Clarke, 562 F.3d 1158, 1163 (11th Cir. 2009)).

We have recognized that the prima facie tests for an equal protection claim and a fair cross-section claim are "virtually identical."  Machetti v. Linahan, 679 F.2d 236, 241 (11th Cir. 1982).  To establish an equal protection violation in the jury selection context, the defendant must show "(1) that he or she is a member of a group capable of being singled out for discriminatory treatment; (2) that members of this group were substantially underrepresented on the venire; and (3) that the venire was selected under a practice providing an opportunity for discrimination."  Grisham, 63 F.3d at 1081 (quoting Cunningham v. Zant, 928 F.2d 1006, 1013 (11th Cir. 1991)).  While a fair cross-section claim focuses on the representativeness of the jury venire, "the focus of an equal protection claim is whether members of a discrete group have been intentionally denied the opportunity to serve on a jury."  Id.  If the defendant sets forth a prima facie case, the burden shifts to the government "to dispel the inference of intentional discrimination."  Id.

Davis states that, "[b]ased on the showing he made at trial, . . . his Fifth Amendment and statutory rights have been violated."  Appellant Br. 61.  But Davis points to no evidence in the record suggesting that there was any intentional discrimination in the jury selection process.  Although Davis cites the publicly-

35

available website that provides jury selection information for the Middle District of Florida, he fails to identify anything about the jury selection process that could be considered "not racially neutral" or "susceptible to abuse as a tool of discrimination." United States v. Perez-Hernandez, 672 F.2d 1380, 1387 (11th Cir. 1982) ("[I]n order to complete the presumption of discrimination raised by the statistical evidence, the defendant must show that the selection procedure is not racially neutral or is susceptible to abuse as a tool of discrimination.").

Davis also argues that the venire violated the JSSA, which provides that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The JSSA requires that each district court "devise and place into operation a written plan" to protect this right. 28 U.S.C. § 1863(a). "By its terms, the JSSA provides remedies only for a 'substantial failure to comply' with its requirements." Carmichael, 560 F.3d at 1277 (quoting 28 U.S.C. § 1867(d)). A JSSA violation is "substantial" if it "frustrates one of the three principles underlying the Act: (1) random selection of juror names; (2) from a fair cross-section of the community; and (3) use of objective criteria for determination of disqualifications, excuses, exemptions, and exclusions." Id.

36

Davis fails to present evidence or argument with respect to any of these three principles, and his concession that he cannot establish a cross-section violation precludes him from satisfying the second prong.  Davis is therefore not entitled to a remedy under the JSSA.  Accordingly, we conclude that the district court properly rejected Davis's challenge to the venire.

## F.    Objection to Juror 14

Davis also argues that the district court erred in refusing to dismiss Juror 14 for cause after initial and rehabilitative questioning.  "The decision whether to excuse a juror for cause is entrusted to the discretion of the trial judge."  United States v. Tegzes, 715 F.2d 505, 509 (11th Cir. 1983) (citation omitted).  We have recognized that "there are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion than in ruling on challenges for cause in empaneling of a jury."  Id.

Davis admits that it is "unlikely [he] preserved any error regarding his cause challenge to Juror 14 because he failed to exercise all his peremptory challenges, request additional challenges, or move to discharge the venire panel and begin anew."  Appellant Br. 61.[4]  After the district court rejected Davis's for-cause challenge to Juror 14, counsel for Davis declined to exercise any additional

_____

[4] Davis filed a supplemental letter brief arguing that this concession was "incorrect because criminal defendants need not take such actions to preserve a cause objection for appeal." Because we conclude that reversal is not warranted on the merits, we need not address this issue further.

37

peremptory challenges and accepted the jury as presently constituted.  Davis had

several peremptory challenges remaining and could have used one to remove Juror

14.  Because he failed to do so, Davis cannot argue that he suffered any harm due

to the court's denial of his for-cause challenge.  See Heflin v. United States, 223

F.2d 371, 377 (5th Cir. 1955) ("If any error was committed in overruling the two

challenges of jurors for cause, clearly there was no prejudice shown, since the

record does not show that appellant [used] all of the 10 peremptory challenges to

which he was entitled.").  In any event, Juror 14 indicated to the judge that he

would follow the court's instructions when weighing and evaluating the testimony,

and the trial court was in the best position to determine Juror 14's ability to be a

competent juror.  We find no abuse of discretion in the court's decision denying

the challenge for cause.

**G.    Exclusion of Evidence**

Finally, Davis argues that the district court erred in preventing him from

introducing a letter Wilson wrote to him into evidence.  As noted, after Wilson

testified about Davis's possession of the firearm, defense counsel moved to

introduce a letter Wilson wrote to Davis after he was arrested.  The government

objected based on relevance and lack of foundation.  Defense counsel explained

that the letter was necessary to establish Wilson's bias—that she was angry with

Davis and had reason to get him arrested.  The district court sustained the

38

government's objection, finding that defense counsel could use the letter to cross-examine Wilson, but could not have her read the letter into the record. Wilson then testified that she was angry with Davis when she wrote the letter and that she and Davis had been arguing at that time about their respective relationships with other people.

We review evidentiary rulings for an abuse of discretion. United States v. Suarez, 601 F.3d 1202, 1215 (11th Cir. 2010). "Even if the district court abused its discretion by admitting or excluding evidence, the conviction must be affirmed unless the defendant can meet its burden of demonstrating that substantial rights were affected by the error." Id. (quoting United States v. Saget, 991 F.2d 702, 709 (11th Cir. 1993)).

Davis argues that the district court abused its discretion by excluding Wilson's letter because it was relevant to demonstrate her state of mind. Although Wilson subsequently admitted her anger, Davis argues that her testimony did not render the exclusion of the letter harmless. But the district court permitted defense counsel to use the letter during cross-examination and Wilson testified, consistent with its contents, that she was, in fact, angry with Davis at the time of his arrest. Defense counsel had an opportunity to cross-examine Wilson using the letter and Davis has not shown that the jury lacked sufficient information to assess Wilson's credibility. See United States v. Leavitt, 878 F.2d 1329, 1339 (11th Cir. 1989) ("A

39

court may restrict cross-examination so long as the jurors receive sufficient information to assess the credibility of the witness."). The district court did not abuse its discretion in refusing to admit Wilson's letter into evidence.

## III.   CONCLUSION

For the foregoing reasons, we affirm the district court's final judgment.

**AFFIRMED.**