[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14804
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cv-00870-CEM-DAB

MARCUS CULL,

Plaintiff - Appellant,

versus

CITY OF ORLANDO, FLORIDA,
CARLOS VILLAVERDE,
individually,
MATHEW FLEURY,
individually,

Defendants – Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 30, 2017)

Before WILLIAM PRYOR, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Marcus Cull appeals the judgment against his complaint about excessive force, malicious prosecution, and racial discrimination by Officers Carlos Villaverde and Mathew Fleury of the City of Orlando, Florida. *See* 42 U.S.C. § 1983. Cull challenges the denial of his objection to the jury venire; the summary judgment against his complaints of discrimination by the officers and by the City; and the judgment as a matter of law against his complaint of malicious prosecution of aggravated battery with a deadly weapon. We affirm.

## I. BACKGROUND

On May 6, 2011, Villaverde and Fleury were driving their patrol cars and received a dispatch to look for a vehicle used to flee from an armed robbery. While stopped at a traffic light, the officers noticed ahead of them a Chevrolet Camaro being driven by Cull that matched the description of the getaway vehicle. Villaverde parked his patrol car sideways to block any traffic that might pass him, drew his service gun, and crept toward the Camaro, which was waiting to turn left. Villaverde was wearing a black polo shirt and black cargo shorts.

Cull and the officers gave different accounts of their encounter. Cull alleged that he did not see the patrol cars. Scared of what he perceived to be an armed pedestrian approaching, Cull began to veer into the lane to his right when Fleury

2

sped forward and struck Cull's passenger door. The officers alleged that Fleury activated his lights and siren and pulled directly beside Cull, who rammed the front left bumper of Fleury's patrol car several times and sped away.

Cull led the officers on a high-speed chase for two miles until he crashed into a curb. Cull then drove slowly against the flow of traffic until he reached the entrance of an apartment complex, where he abandoned his car and fled on foot. Villaverde shot Cull one time in the back, but Cull ran to a friend's apartment. The officers found Cull and transported him to the hospital for treatment.

Cull appeared in a Florida court for trial on six criminal charges. A jury acquitted Cull of aggravated assault with a firearm and the Florida court declared a mistrial on the five other charges. After the prosecutor nol prossed the charges against Cull for aggravated battery with a deadly weapon and possessing a firearm in the commission of a felony, Cull pleaded nolo contendere to aggravated assault with a deadly weapon, aggravated fleeing or attempting to elude an officer, and resisting an officer without violence.

Cull filed a complaint in a Florida court against the City and the two officers, and the City and officers removed the complaint to the district court. Cull alleged that Villaverde's use of force was excessive; the officers' actions were "racially motivated" and violated Cull's right to equal protection; the City had "developed and maintained policies, procedures, customs and or practices

exhibiting deliberate indifference to" and "failed to train and supervise its officers" about "the constitutional rights of African Americans"; and the officers made "false allegations" against Cull that resulted in his prosecution for aggravated battery with a deadly weapon and for aggravated assault with a firearm.

The City and the officers moved for summary judgment, which the district court granted in part and denied in part. The district court entered summary judgment against Cull's complaint about the denial of equal protection because he "offer[ed] neither argument nor evidence to show that Officers Fleury and Villaverde were motivated by race" to create "a genuine issue for trial." The district court also entered summary judgment against Cull's complaint of municipal liability because he "fail[ed] to identify 'a final policymaker' that acted on behalf of the City" and because a newspaper report that Cull submitted "discuss[ing] the use of force by the [Orlando Police Department] between 2010 and 2014" was "inadmissible hearsay" that Cull had not "indicat[ed] . . . could be reduced to admissible form." The district court concluded that the report failed "to show a[] . . . custom of either excessive force, in general, or excessive force against black citizens" or a "policy of failing to train its officers on the use of excessive force." The report lacked "sufficient detail to draw comparisons to the present case" because it "sa[id] nothing about the circumstances underlying each use of force or whether the force in question was excessive" and its "comparison of the

4

portion of black citizens in the population—28%—to the portion of individuals subject to force that were black— 55%—" was "flaw[ed] . . . [in] assum[ing], without providing any basis, that police encounters occur uniformly across all races." The district court also ruled that Cull waived any objection he had to summary judgment against his complaint of malicious prosecution of aggravated assault with a firearm by not responding to the officers' motion.

The district court denied summary judgment against Cull's complaint of malicious prosecution of aggravated battery with a deadly weapon on the ground that a genuine dispute of fact existed about whether Fleury had probable cause to ram Cull's vehicle and, "if Mr. Cull's story [was] true, . . . the officers' statements to the contrary would have improperly influenced the decision to prosecute Mr. Cull . . . ." The district court also denied summary judgment against Cull's complaint of excessive force because his "version of the facts indicate[d] that, . . . when [he was] shot . . ., there was no meaningful threat" that justified the use of deadly force against him and "Villaverde had fair warning that such conduct was unreasonable."

During jury selection, Cull's attorney voiced "concern[] about the overall composition of the venire panel" on the ground it was not "reflective of the relevant community" and "that Mr. Cull's Sixth Amendment right to a jury of his peers will not be observed."  The district court stated that the jury was "randomly

selected" and it had "to rely on the process . . . [under which] the jurors have to be randomly selected," and Cull's attorney responded that he "understood." The district court "note[d] [for the record] that we have one African American female on the jury and no other African Americans on this jury" and heard from counsel for Villaverde. After the district court repeated that it was "confident this jury is randomly selected" and Cull's attorney responded, "Yes, sir," the district court overruled Cull's objection.

The trial ended unfavorably for Cull. The officers moved for judgment as a matter of law on Cull's complaint of malicious prosecution of aggravated battery with a deadly weapon, and the district court granted the motion. The jury found that Villaverde did not use excessive force against Cull.

## II. STANDARD OF REVIEW

One standard of review governs this appeal. "We review *de novo* constitutional challenges to jury selection processes," *United States v. Grisham*, 63 F.3d 1074, 1077 (11th Cir. 1995), and to the entry of summary judgment and of judgment as a matter of law, *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).

## III. DISCUSSION

Cull makes three challenges to the judgment against him. First, Cull argues that the district court violated his right to equal protection because "the venire

6

panel was not comprised of a representative cross section of the community."

Second, Cull challenges the summary judgment against his complaints about

discrimination by the officers and by the City. Third, Cull challenges the judgment

entered at trial against his complaint of malicious prosecution.

The district court correctly overruled Cull's objection to the jury venire

based on the exclusion of African American citizens. To establish that he was

denied the right to select a petit jury from a representative cross-section of the

community, Cull had to prove that African Americans were a distinctive group in

the community; that the number of African Americans in the jury venire did not

fairly and reasonably represent the local population; and that the

underrepresentation was attributable to systemic exclusion of African Americans in

the jury selection process. *See United States v. Davis*, 854 F.3d 1276, 1295 (11th

Cir. 2017); *Jackson v. Morrow*, 404 F.2d 903, 906 (5th Cir. 1968) (considering a

challenge to the racial composition of the jury venire in a civil case). Cull

acknowledged that the venire was selected at random from the community. He

failed to mention how many African Americans lived in the district or to allege

that they were systemically excluded. On appeal, Cull cites statistical information

about the racial composition of the district and the number of African Americans

and Caucasians on his jury venire, but like the defendant in *Davis*, Cull "fails to

identify anything about the jury selection process that could be considered not

racially neutral or susceptible to abuse as a tool of discrimination." *Davis*, 854 F.3d at 1296 (internal quotation marks and citation omitted). Instead, Cull speculates that "opportunities [exist] for discrimination to be injected into" the plan used to locate and summon citizens for jury service. *See Jackson*, 404 F.2d at 905–06 (rejecting equal protection challenge to jury venire without an "adequate showing" that the names placed into a "jury box" were selected using an unconstitutional process). The district court did not err by rejecting Cull's conclusory challenge to the racial composition of the jury venire.

The district court did not err by entering summary judgment in favor of the officers and the City and against Cull's complaint of discrimination based on his race. Cull argues that "[t]he language employed by Villaverde" before he shot Cull created a genuine dispute about whether the officer was "motivated by race," but the City argues Cull is making "this brazen assertion . . . for the first time" and Cull fails to cite where Villaverde's statement is located in the record, *see* Fed. R. App. P. 28(a)(8)(A). Cull argues that the newspaper article "unambiguously demonstrated . . . [that the City's] officers were more likely to use . . . deadly force against African Americans" and that the City had a policy or custom of tolerating discrimination, but Cull could not rely on a hearsay news article to defeat the motion for summary judgment. Cull does not dispute that the article could not be

8

reduced to an admissible form for trial. *See McMillian v. Johnson*, 88 F.3d 1573, 1584–85 (11th Cir. 1996).

We affirm the judgment as a matter of law against Cull's complaint of malicious prosecution of aggravated battery with a deadly weapon. Cull argues that a reasonable jury could have returned a verdict in his favor. *See* Fed. R. Civ. P. 50(a)(1). But we cannot review the judgment entered against Cull because he failed to order a transcript of his trial. *See* Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by . . . or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion."). "[W]e must affirm . . . [because Cull] fails to provide all the evidence that the trial court had before it" in ruling on the officers' motion. *See Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002).

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of the City and Officers Villaverde and Fleury.