855 So.2d 150 (2003)
Chad PETRUCELLI, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-1755.
District Court of Appeal of Florida, Second District.
August 15, 2003.
*151 James Marion Moorman, Public Defender, and Jean-Jacques A. Darius, Special *152 Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jonathan P. Hurley, Assistant Attorney General, Tampa, for Appellee.
SILBERMAN, Judge.
Chad Petrucelli appeals from his convictions and sentences for burglary to a dwelling, felonious possession of firearms, aggravated assault, and grand theft. He argues that the burglary conviction must be reversed because the trial court erred in reading a stipulation to the jury that did not accurately reflect the agreed-upon facts. We agree. He also argues that the trial court erred by not giving a requested jury instruction and by not allowing him to present evidence in mitigation of his sentence. Although these issues are not a basis for our reversal, we address them because they may have to be considered by the trial court on remand. We affirm Petrucelli's other issues without discussion.
The State charged Petrucelli with armed burglary, grand theft of firearms, felonious possession of firearms, and aggravated assault. Other than the aggravated assault, the charges arose from an incident that occurred on September 2, 2000, during which property was taken from the home of Charles Smith. Petrucelli pleaded no contest to the charges of felonious possession of firearms and aggravated assault. Following a jury trial, he was convicted of grand theft of a firearm and burglary to a dwelling, the latter a lesser-included offense to the armed burglary charge.
At trial, Petrucelli did not dispute that he entered Mr. Smith's home on September 2, or that he took firearms from the home. Instead, he claimed that he was invited into the home by his girlfriend of several months, Crystal Crocker, and that while he may have committed a theft, he did not commit a burglary.
Mr. Smith and Ms. Crocker's mother, Carol Weese, were living together in the home. Ms. Crocker was also living there and had a key to the home. She repeatedly brought Petrucelli into the home, and he slept there on occasion, apparently without the knowledge of Mr. Smith or Ms. Weese. On September 2, 2000, Ms. Crocker again brought Petrucelli into the home.
The parties agreed that the trial court would read a stipulation to the jury. The prosecutor told the trial court that the stipulation would be written out to state that "[t]he Defendant was in possession of a firearm on September the 4th of 2000. This firearm was owned by Mr. Smith, and was proven to be operational." The trial court confirmed that Petrucelli understood the stipulation, as follows:
COURT: Rather than call in the witness and run the risk that something else will be said or that other testimony will come in, Mr. Michailos [Defense Counsel] is suggested [sic] that you make a strategic decision to allow him to concede that you were in possession of the weapon two days later and that it was operational and then none of the facts surrounding any of the other things that are alleged will come out. So they will be able to establish without you contesting it that you were in possession of the weapon, but the good news is that none of the other circumstances and the other witnesses related to the other crimes that we're not trying today will be brought before the jury; do you understand that?
Mr. Petrucelli: Yes, Your Honor.
(Emphasis added).
During its case-in-chief, the State requested that the trial court read the stipulation to the jury. The trial court told the jury the following:

*153 I'm now going to read to you a stipulation. And what a stipulation is or means is that the parties have agreed that you can accept what I am about to read to you as being factually correct. It obviates the need to have to call additional witnesses to establish this testimony.
This stipulation is is [sic] that the Defendant, Chad Petrucelli, was in possession of a firearm on September 4th of 2000 and it was taken in the burglary which occurred on September 2nd of 2000. Further, this firearm was operational at that time.
That's the stipulation that has been entered between the parties and rather than have a witness testify to those facts, you can accept them as being facts in this case.
(Emphasis added).
Petrucelli argues that the stipulation that was read to the jury did not reflect the facts to which Petrucelli and the State had agreed because the stipulation told the jury to accept as a fact that a burglary had occurred. Petrucelli asserts that the trial court relieved the State of its burden to prove the elements of a burglary beyond a reasonable doubt and that it was directly contrary to his defense that he had permission to be in the house and, at most, had committed a theft. He acknowledges that he did not object to the stipulation that was read, but he claims that the error is fundamental and a denial of due process. The State disagrees that the error was fundamental, and it also argues that any error was harmless.
"A fundamental error is one that undermines the confidence in the trial outcome and goes to the very foundation of a case. Often, it is the equivalent of a denial of due process." Jassan v. State, 749 So.2d 511, 512 (Fla. 2d DCA 1999); see also Reeves v. State, 647 So.2d 994, 995 (Fla. 2d DCA 1994) (finding that the trial court committed fundamental error when it gave a misleading jury instruction regarding an essential element of the crime); Mercer v. State, 656 So.2d 555, 556 (Fla. 1st DCA 1995) (concluding that the trial court committed fundamental error because its instructions relieved the State of its burden to prove an essential element of the offense, deprived the defendant of her sole theory of defense, and may have resulted in an impermissible conviction for a non-existent crime).
Based on the circumstances here, we conclude that fundamental error occurred when the trial court read a stipulation to the jury that was substantially different from the language specifically agreed to by Petrucelli and the State. The trial court's instruction that the jury had to accept as fact that a burglary had occurred undermined Petrucelli's defense that he did not commit a burglary because he had consent to be in the home. Because of the erroneous statement to the jury, Petrucelli was denied due process and is entitled to a new trial on the burglary charge.
Petrucelli also raises an issue concerning sentencing on the burglary charge. Our reversal of the burglary conviction renders this error moot; however, we discuss the issue so that error may be avoided on remand.
Petrucelli's original sentence for the burglary included a prison releasee reoffender (PRR) designation, subjecting him to a fifteen-year minimum term of imprisonment. Petrucelli filed a motion to correct the sentence and alleged that he did not qualify for a PRR sentence. He also argued that because the PRR designation was improper, he was entitled to be sentenced under the sentencing guidelines and to present mitigating evidence in support of a sentence of less than fifteen years' imprisonment.
*154 The trial court granted Petrucelli's motion and removed the PRR designation, but it stated that the fifteen-year sentence was appropriate and that it would not consider Petrucelli's evidence. Because Florida Rule of Criminal Procedure 3.720(b) states that a trial court "shall entertain submissions and evidence by the parties that are relevant to the sentence," we conclude that after the PRR designation was stricken, Petrucelli should have been permitted to present mitigating evidence as to sentencing. See also Davis v. State, 642 So.2d 136, 137 (Fla. 3d DCA 1994).
Petrucelli next argues that the trial court erred in denying a requested special jury instruction that an adult who resides in the residence is authorized to give consent to another person to enter the residence. Again, we address this issue because it may resurface in a new trial on the burglary charge.
Consent to enter a premises is an affirmative defense to the charge of burglary. Coleman v. State, 592 So.2d 300, 301 (Fla. 2d DCA 1991). "A defendant has the initial burden of establishing the existence of such a defense, but thereafter the burden shifts to the State to disprove the defense beyond a reasonable doubt." Id. at 301-02. When consent is placed in issue, the State has the burden to establish that consent was not given or that the person who gave consent did not have the legal ability to give consent. See Haugabrook v. State, 827 So.2d 1065, 1069-70 (Fla. 2d DCA 2002) (noting the State did not establish that the person who purportedly gave consent lacked the legal ability to do so and that this fact was known to the defendant); Hansman v. State, 679 So.2d 1216, 1217 (Fla. 4th DCA 1996) (reiterating that once the defendant has offered any evidence to show consent, the State must disprove consent beyond a reasonable doubt).
The standard jury instruction on burglary incorporates the question of consent, stating that:
Before you can find the defendant guilty of Burglary, the State must prove the following three elements beyond a reasonable doubt:
1. (Defendant) [entered] [remained in] a [structure] [conveyance] owned by or in the possession of (person alleged).
2. (Defendant) did not have the permission or consent of (person alleged), or anyone authorized to act for him, to [enter] [remain in] the [structure] [conveyance] at the time.
3. At the time of [entering] [remaining in] the [structure] [conveyance] (defendant) had a fully-formed, conscious intent to commit the offense of (crime alleged) in that [structure] [conveyance].
Fla. Std. Jury Instr. (Crim.) Burglary.
Here, the evidence reflects that Crystal Crocker, a resident of the home, consented to Petrucelli's entry into the home. The trial court gave the standard instruction and identified Charles Smith and Carol Weese as the persons from whom Petrucelli did not have permission or consent. It did not give any specific instruction with respect to Crystal Crocker's ability to give consent.
It is well established that a trial court has broad discretion in deciding whether to give or withhold a jury instruction. See ITD Indus. Inc. v. Bus. Res. Group, Inc., 779 So.2d 532, 534 (Fla. 2d DCA 2000). "In order to be entitled to a special jury instruction, a defendant must prove that the special instruction was supported by the evidence, was a correct statement of the law and was not confusing or misleading, and the standard instruction did not adequately cover the theory of defense." Keller v. State, 849 So.2d 385, *155 388 (Fla. 2d DCA 2003); see also Stephens v. State, 787 So.2d 747, 756 (Fla.2001).
Ms. Crocker acknowledged that she was not allowed to bring Petrucelli into the home and that she would sneak him into the home. This testimony raises serious doubt as to whether Ms. Crocker had the authority to give consent to Petrucelli or whether Petrucelli could have reasonably relied on her consent. As a result, Petrucelli's proposed instruction that an adult resident was authorized to give consent may have misled or confused the jury, and we cannot agree that the trial court abused its discretion in refusing to give the proposed instruction. However on retrial, a special instruction may be warranted if the evidence supports it, if the instruction is not confusing or misleading, and if the standard instruction is not adequate. See Keller, 849 So.2d 385, 387-88.
Accordingly, we affirm Petrucelli's convictions for felonious possession of firearms, aggravated assault, and grand theft of a firearm, and we reverse his conviction and sentence for burglary of a dwelling and remand for a new trial on that charge.
Affirmed in part, reversed in part, and remanded.
WHATLEY and KELLY, JJ., concur.