KELLY, Judge.
Patrick Neal Wolf challenges his conviction for burglary of a dwelling. The dwelling he was accused of burglarizing was his former residence. His defense was based in part on the contention that the victim had wrongfully evicted him; therefore, he had a legal right to enter the home. In this appeal he argues that the trial court abused its discretion when it denied his request for a special jury instruction that was a recitation of various subsections of chapter 83, Florida Statutes, the Florida Residential Landlord-Tenant Act. We conclude that the trial court acted well within its discretion when it found Mr. Wolf had failed to establish that he was entitled to the requested instruction. Accordingly, we affirm.
The victim, Richard Schmid, rented a bedroom in his home to Mr. Wolf on a month-to-month basis. After the first month, Mr. Wolf failed to timely pay his rent and the victim asked him to leave. He gave Mr. Wolf until the next day to move out, which Mr. Wolf did, leaving his house key but taking most of his belongings with him. The victim had the locks changed the same day Mr. Wolf left.
Approximately two weeks later, the victim returned home from work and noticed that several items of his personal property were missing. He suspected Mr. Wolf was the culprit and confronted him about the theft. Mr. Wolf admitted to taking the items and told the victim that he used a garage door opener to gain entry into the home. When questioned by police, however, Mr. Wolf said he entered the victim’s home through an unlocked window, removed the victim’s property, and left through the garage. At trial, Mr. Wolf did not testify in his own defense and he called no witnesses.
Mr. Wolfs primary defense to the burglary charge was that the State had not proven he had the intent to take the victim’s property at the time he entered the home. Although Mr. Wolf had not testi- *1205 fled at trial, his attorney nevertheless argued that Mr. Wolf had gone back to the home only intending to retrieve some belongings he had left there, but after entering the home he decided to take the things belonging to the victim as an “afterthought” to “teach [the victim] a lesson” for the way he was “kicked out” without advance notice. Counsel also argued that Mr. Wolf had a right to be in the home because the victim had terminated the rental agreement without advance notice, a fact the victim acknowledged during his testimony.
At the charge conference, defense counsel requested the following special jury instruction, based on what trial counsel referenced as the “relevant portions” of sections 83.46, 83.56, 83.57, and 83.43, Florida Statutes, which are part of the Florida Landlord-Tenant Act:
1. Landlord and Tenant Law: Residential Tenancies
A landlord cannot terminate a tenancy on the spot by an immediate “verbal eviction.”
Termination of rental agreement
(1) If the tenant materially fails to comply with material provisions of the rental agreement, other than a failure to pay rent, or reasonable rules or regulations, the landlord may:
(a) If such noncompliance is of a nature that the tenant should not be given an opportunity to cure it or if the noncompliance constitutes a subsequent or continuing noncompliance within 12 months of a written warning by the landlord of a similar violation, deliver a written notice to the tenant specifying the noncompliance and the landlord’s intent to terminate the rental agreement by reason thereof. Examples of noncompliance which are of a nature that the tenant should not be given an opportunity to cure include, but are not limited to, destruction, damage, or misuse of the landlord’s or other tenants’ property by intentional act or a subsequent or continued unreasonable disturbance. In such event, the landlord may terminate the rental agreement, and the tenant shall have 7 days from the date that the notice is delivered to vacate the premises. The notice shall be adequate if it is in substantially the following form:
You are advised that your lease is terminated effective immediately. You shall have 7 days from the delivery of this letter to vacate the premises. This action is taken because (cite the noncompliance).
(b) If such noncompliance is of a nature that the tenant should be given an opportunity to cure it, deliver a written notice to the tenant specifying the noncompliance, including a notice that, if the noncompliance is not corrected within 7 days from the date the written notice is delivered, the landlord shall terminate the rental agreement by reason thereof.
Examples of such noncompliance include, but are not limited to, activities in contravention of the lease or this act such as having or permitting unauthorized pets, guests, or vehicles; parking in an unauthorized manner or permitting such parking; or failing to keep the premises clean and sanitary. The notice shall be adequate if it is in substantially the following form:
You are hereby notified that (cite the noncompliance). Demand is hereby made that you remedy the noncompliance within 7 days of receipt of this notice or your lease shall be deemed terminated and you shall vacate the premises upon such termination. If this same conduct or conduct of a *1206 similar nature is repeated within 12 months, your tenancy is subject to termination without your being given an opportunity to cure the noncompliance.
(2)If the tenant fails to pay rent when due and the default continues for 3 days, excluding Saturday, Sunday, and legal holidays, after delivery of written demand by the landlord for payment of the rent or possession of the premises, the landlord may terminate the rental agreement. Legal holidays for the purpose of this section shall be court-observed holidays only. The 3-day notice shall contain a statement in substantially the following form:
You are hereby notified that you are indebted to me in the sum of_ dollars for the rent and use of the premises (address of leased premises, including county), Florida, now occupied by you and that I demand payment of the rent or possession of the premises within 3 days (excluding Saturday, Sunday, and legal holidays) from the date of delivery of this notice, to wit: on or before the_day of_(year).
(landlord’s name, address and phone number)
(3)The delivery of the written notices required shall be by mailing or delivery of a true copy thereof or, if the tenant is absent from the premises, by leaving a copy thereof at the residence.
Rent; duration of tenancies
(1) Unless otherwise agreed, rent is payable without demand or notice; periodic rent is payable at the beginning of each rent payment period; and rent is uniformly apportionable from day to day.
(2) If the rental agreement contains no provision as to duration of the tenancy, the duration is determined by the periods for which the rent is payable, if the rent is payable weekly, then the tenancy is from week to week; if payable monthly, tenancy is from month to month; if payable quarterly, tenancy is from quarter to quarter; if payable yearly, tenancy is from year to year. Termination of tenancy without specific term
A tenancy without a specific duration may be terminated by either party giving written notice in the manner provided in s. 83.56(4), as follows:
(1) When the tenancy is from year to year, by giving not less than 60 days’ notice prior to the end of any annual period;
(2) When the tenancy is from quarter to quarter, by giving not less than 30 days’ notice prior to the end of any quarterly period;
(3) When the tenancy is from month to month, by giving not less than 15 days’ notice prior to the end of any monthly period; and
(4) When the tenancy is from week to week, by giving not less than 7 days’ notice prior to the end of any weekly period.
Definitions
As used in this part, the following words and terms shall have the following meanings unless some other meaning is plainly indicated:
(1) “Landlord” means the owner or lessor of a dwelling unit.
(2) “Tenant” means any person entitled to occupy a dwelling unit under a rental agreement.
(3) “Premises” means a dwelling unit and the structure of which it is a part and a mobile home lot and the appurtenant facilities and grounds, areas, facili *1207 ties, and property held out for the use of tenants generally.
(4) “Rent” means the periodic payments due the landlord from the tenant for occupancy under a rental agreement and any other payments due the landlord from the tenant as may be designated as rent in a written rental agreement.
(5) “Rental agreement” means any written agreement, including amendments or addenda, or oral agreement for a duration of less than 1 year, providing for use and occupancy of premises.
The trial court declined to give the instruction.
A trial court has wide discretion in deciding whether to give or withhold a jury instruction. See Petrucelli v. State, 855 So.2d 150 (Fla. 2d DCA 2003). In criminal trials, “[t]he standard jury instructions are presumed correct and are preferred over special instructions.” Stephens v. State, 787 So.2d 747, 755 (Fla.2001). In order to establish entitlement to a special jury instruction, a defendant “must prove: (1) the special instruction [was supported by the evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the [special instruction was a correct statement bf the law and not misleading or confusing.” Id. at 756. In rejecting Mr. Wolfs proposed instruction, the trial court stated, In part,
I [t]his special instruction that you asked I [sic] while is a correct statement in part I of Chapter 83, there’s no question in this I Court’s mind under the entire circum-I stances of this case that that would, in I fact, be confusing to and mislead the I jury. And I’ll specifically find that the I standard instructions, you’ll have to Bwork with them, they — any theory of I defense that you posited here, I believe | the standard instruction applies to that. I don’t think you have met the burden for a special instruction.
We agree with the trial court.
First, it is self-evident that the special instruction would have been confusing to the jury. As the trial court aptly stated, “even I have to read through [the instruction] very carefully to even begin to understand in the context of all that’s being said and done here.” For this reason alone, we would affirm the trial court.
Second, we also agree with the trial court that Mr. Wolf did not meet his burden to demonstrate that the standard jury instruction did not adequately cover his theory of defense. The standard jury instruction for burglary provides in pertinent part:
To prove the crime of Burglary, the State must prove the following [two] [three] elements beyond a reasonable doubt:
1. (Defendant) entered a [structure] [conveyance] owned by or in the possession of (person alleged).
2. At the time of entering the [structure] [conveyance], (defendant) had the intent to commit [an offense] [ (the crime alleged) ] in that [structure] [conveyance].

The offense intended cannot he trespass or burglary.

Give element 3 only if defendant meets his or her burden of production that he or she had an invitation or license to enter, or that the premises were open to the public. [Citations omitted].

3. [ (Defendant) was not [licensed] [invited] to enter the [strueture][convey-anee].] [The premises were not open to the public at the time of the entering.] Give if applicable. § 810.07, Fla. Stat.
You may infer that (defendant) had the intent to commit a crime inside a [struc *1208 ture][conveyance] if the [entering][attempted entering] of the [structure] [conveyance] was done stealthily and without the consent of the owner or occupant.
Element 3 is given if the defendant is claiming as an affirmative defense that he has an invitation or license to enter or that the premises were open to the public. See State v. Hicks, 421 So.2d 510, 511 (Fla.1982) (holding that consent or license to enter is an affirmative defense, and that “nonconsent” to enter was not an essential element of burglary).
Mr. Wolfs counsel argued that the manner of the eviction was “tantamount to an affirmative defense, that if [Mr. Wolf] had a lawful right to be there or believed he had a lawful right to be there” he was protected against unlawful eviction or termination of his rental agreement under the statutes governing residential tenancies. Yet, despite this argument, counsel rejected element 3 of the standard jury instruction as inapplicable. Thus, whatever defense Mr. Wolf thought the “unlawful eviction” j>rovided, he apparently did not believe it meant he was licensed to enter the home. Mr. Wolfs rejection of element 3 of the standard instruction is problematic for an additional reason — without any reference to license or consent to enter the premises as a defense to burglary, it is hard to imagine what the jury was supposed to glean from the special instruction.
Because we conclude that the trial court did not abuse its discretion when it found Mr. Wolf failed to establish his entitlement to the special jury instruction, we affirm.
PETERS, R. TIMOTHY, Associate Judge, Concurs specially.
DAVIS, C.J., Dissents with opinion.