[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 22-10439

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KORETSKY MAGLOIRE,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cr-20930-RS-1

————————————————

Before WILSON, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Koretsky Magloire appeals the district court's revocation of his supervised release and the revocation issuance of a sentence of two years' imprisonment followed by one year of supervised release, instead. He argues that the district court abused its discretion in revoking his supervised release because there was insufficient evidence to find him guilty of attempted burglary, in denying his motion for a continuance, and in pronouncing an allegedly procedurally and substantively unreasonable sentence after his supervised release was revoked. After review, we affirm.

## I.    Background

On January 3, 2019, Magloire pleaded guilty to possession of 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) (Count 1), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count 2). The district court sentenced Magloire to two years' and one day imprisonment, followed by three years on supervised release. The conditions of Magloire's supervised release included prohibitions on the commission of other crimes, possession or use of a controlled substance, failing to comply with drug testing, and failing to work regularly unless excused from doing so.

Magloire was released from prison and began his term of supervised release on June 24, 2020. On July 12, 2021, the

probation office filed a petition seeking a warrant and the revocation of Magloire's supervised release.  The petition alleged that Magloire violated the terms of his supervised release by committing attempted burglary of an unoccupied structure (Violation 1); by committing misdemeanor criminal mischief (Violation 2); by possessing or using a controlled substance (Violation 3);  by attempting to use an adulteration device to avoid detection of illegal drug use (Violation 4); and by failing to follow his probation officer's instruction to provide a completed job search log (Violation 5).  Prior to his first supervised release revocation hearing, Magloire admitted to Violations 3 through 5.

A supervised release revocation hearing was held on August 30, 2021.  In that hearing, the government proffered, and the district court entered into evidence, four Ring video "snippets" of what the government argued was an attempted burglary of an apartment by Magloire on June 27, 2021.  In the video footage, a man with a blue ski mask covering his face is shown approaching apartment 2709 and pushing and shoving on the door.  He then tries to insert an object into the door seal in an attempt to open the door.  He then smears a liquid substance over the Ring camera lens, which obscures the view.

The government called Officer Jose Gutierrez, who testified as follows.  On June 27, 2021, he encountered Magloire at the apartment complex, who told Officer Gutierrez that he was at apartment 2709 to visit a friend named Sabrina.  Magloire said that he had keys for the elevator and the apartment.  However,

Magloire did not have anything "that matched the actual key fob for the elevator or the apartment." Officer Gutierrez spoke to the person Magloire claimed to be "Sabrina" on the phone, and she said she lived in apartment 2708. But the apartment Magloire was trying to enter was apartment 2709. Officer Gutierrez contacted the owner of apartment 2709, who said that Sabrina was his "ex-girlfriend" or his "ex-wife" and that he had not given her permission to enter the apartment. Officer Gutierrez identified a small screwdriver that was found on Magloire's person when he was detained.

The government also called Sergeant Shawntel Kirkland, who testified as follows. She arrived at the apartment alongside Officer Gutierrez. She spoke with Magloire, who admitted that he did not live in the apartment complex, but he stated that he had been there earlier at his friend's apartment. He stated his friend's apartment number which "began with 27," but the unit he identified was not the unit he was seen trying to enter. The sergeant discovered a blue ski mask in Magloire's car that matched the mask the suspect wore in the Ring video footage.

Magloire testified in his own defense as follows. On June 27, 2021, he went to see Sabrina at apartment 2709 "at her request." When he arrived, Sabrina did not answer her phone or the apartment door. He then tried to open the apartment with the key Sabrina had given him. He had been to the apartment before, as Sabrina was "go[ing] out with [his] friend . . . Kamal." Unsuccessful, Magloire went to leave, but Sabrina called and told

him to wait for her, so he walked back towards the apartment. Then, an officer stopped Magloire and asked him if he lived there. After Magloire told the officer that he did not live there but that he was on the phone with the person that lived there, the officer told him that he was being detained. He told the officer that he was "doing nothing wrong."

Magloire admitted that he was the individual in the Ring camera footage, but he maintained that he did not try to break into the apartment, that the screwdriver was not in his pocket but was in a "Mercedes pouch" that he had, and that if given additional time he could get Kamal and Sabrina to come to court to testify in his favor. When asked why he was wearing a mask in the video footage, Magloire testified that he bought it from a 7-Eleven, but that he "didn't have it on."[1] Magloire stated that his key did not work because he did not know that Kamal had changed the lock on the apartment door after losing his keys. He further claimed that he knocked on the door, but when no one answered, he "tr[ied] to push it so [Sabrina] could hear" him.[2] He stated that it "makes no sense" for him to try and burglarize his friend, especially because he was on "probation."

On cross-examination, Magloire testified that he learned of the date of the supervised release revocation hearing "[l]ast

---

[1] This testimony is contradicted by the video footage.

[2] On cross-examination, Magloire admitted that the Ring video footage did not show him knocking on the door.

week." Yet, he did not contact Sabrina or Kamal about testifying on his behalf.  When asked separately if the Ring footage showed him putting a substance on the camera and whether the screwdriver was his, Magloire responded, "[o]kay," to each question.

Following Magloire's testimony, his counsel asked for a continuance so that he could investigate the case further, and the district court denied the motion.

The district court made several findings.  It stated that Magloire admitted that he was in the video and that he was clearly wearing a "total mask," not a mask for COVID-19 purposes.[3]  It found credible Sergeant Kirkland's testimony about where the mask was found.  It found that Magloire was "obviously" pushing into apartment 2709 and "using the screwdriver to get in," so there was "no question" Magloire attempted to burglarize the apartment.  It stated that, whether or not Magloire knew Sabrina and whether or not he attempted to burglarize the wrong apartment, "it is clear that the person did not consent" to the attempted burglary.  The court further stated that one video "clearly shows that Mr. Magloire threw a substance, some sort of substance to obstruct the camera, which also shows intent."  Accordingly, the district court determined that

---

[3] Magloire does not dispute the district court's characterization of the Ring camera footage.

Magloire was guilty of attempted burglary (Violation 1), but not guilty of criminal mischief (Violation 2).

Based on the violations and Magloire's criminal history category of III, the guidelines range was 8 to 14 months' imprisonment.  The government deferred to the probation officer's recommendation of 12 months' imprisonment followed by 2 years of supervised release.  Magloire requested a sentence at the low end of his guidelines range with no additional term of supervised release.  Magloire again denied that he was trying to break into the apartment, although he acknowledged that the video "look[ed] bad."

Regarding the 18. U.S.C. § 3553(a) sentencing factors, the district court stated that it was "very concerned" by Magloire's denial.  It found that he "ha[d] obstructed justice by plain lying," as the video left "no question" that he intended to break into the apartment, that he used a mask and screwdriver to do so, and that he continued to deny those facts despite admitting that the video looked bad.  It stated that it "ha[d] to protect the public[,] . . . including the individuals in that residence of the apartment complex" and emphasized that "[e]very man's home is his castle." For those reasons and "because of no acknowledgement of wrongdoing," the district court revoked Magloire's supervised release, applied an upward variance, and sentenced him to three years' imprisonment.

Magloire asked if he could "make the person show up in court," but the district court explained that it denied his

continuance because the video was "so clear" that calling his friend would not "do any good." Magloire objected to the upward variance. The probation officer then notified the court that the statutory maximum sentence was two years' imprisonment, not three, so the district court vacated its oral sentence, instructed the parties to file memorandums on the sentencing issue, and scheduled a new hearing.

At the second hearing, Magloire's counsel urged the court to show mercy and consider the fact that Magloire was only 25 years' old, had two minor children to support and another baby on the way, and had a mother in Haiti who he also supported financially. Magloire personally apologized to the court for being "selfish" and "getting in trouble," and stated that he "wanted to do better." He explained that at the first hearing, he had been in denial about the fact that he had violated supervised release, but he had time to think about it, and he understood that there "[a]in't no way around being wrong."

The district court reiterated its concern regarding the right for people not to have their homes broken into, and emphasized that Magloire refused to admit wrongdoing for the violation at the first hearing and instead "came up with a fancy story." The district court also stated that it believed Magloire was a "smooth talker" who did not accept responsibility, as evidenced by his lies under oath that were contradicted by the Ring footage. The district court also highlighted Magloire's criminal history and prior supervised release violations. The court once again stated

that it was "taking into consideration" § 3553(a) and, because of the need to "protect the public," it needed to be "harsh on this violation." The district court then revoked Magloire's supervised release and sentenced him to the statutory maximum of two years' imprisonment and one year of supervised release.

## II.    Discussion

### A. Whether the district court abused its discretion in revoking Magloire's supervised release

Magloire argues that the district court abused its discretion in revoking his supervised release based on the attempted burglary violation. Specifically, he argues that there was insufficient evidence to show by a preponderance of the evidence that (1) he intended to commit a crime once inside the apartment, and (2) that no one gave him consent to enter the apartment.

We review a district court's revocation of supervised release for abuse of discretion, *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014), and its findings of fact for clear error, *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993).

A district court may, after considering certain § 3553(a) factors, revoke a defendant's term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute without credit for time previously served on supervised release when it finds by a preponderance of the evidence that the defendant violated a condition of his

supervised release. *United States v. Hofierka*, 83 F.3d 357, 362 (11th Cir. 1996); 18 U.S.C. § 3583(e)(3). "A preponderance of the evidence is evidence which is more convincing than the evidence offered in opposition to it." *United States v. Watkins*, 10 F.4th 1179, 1184 (11th Cir. 2021) (quotations omitted). This standard only requires "the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Id.* (quotations omitted). In other words, the government must persuade the trier of fact that the defendant more likely than not committed a violation of the terms of his supervised release. *Id.* at 1185.

Importantly, a mandatory condition of any federal defendant's supervised release is that the defendant must not commit another crime while on release. 18 U.S.C. § 3583(d). Determining whether a defendant violated a condition of his supervised release depends on his actual conduct, not whether he was charged with, or convicted of, a crime. U.S.S.G. § 7B1.1 (cmt.) n.1; *see also Johnson v. United States*, 529 U.S. 694, 700 (2000) (explaining that for purposes of supervised release, "the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt").

Under Florida law, attempted burglary involves "(1) the intent to commit burglary, and (2) some overt act directed toward its commission." *Jones v. State*, 608 So. 2d 797, 798 (Fla. 1992). Burglary itself requires that the defendant (1) entered or remained (2) in a dwelling, a structure, or a conveyance (3) with the intent to

commit a crime therein, unless the structure was open to the public or the defendant was invited to enter or remain. *Drew v. State*, 773 So. 2d 46, 48 (Fla. 2000). "[P]roof of the attempt to enter such structure or conveyance at any time stealthily and without the consent of the owner or occupant thereof is prima facie evidence of attempting to enter with intent to commit an offense." Fla. Stat. § 810.07(2). However, consent to enter the premises in question is an affirmative defense. *Hansman v. State*, 679 So. 2d 1216, 1217 (Fla. 4th DCA 1996); *Petrucelli v. State*, 855 So. 2d 150, 154 (Fla. 2d DCA 2003). *Haugabrook v. State*, 827 So. 2d 1065, 1070 (Fla. 2d DCA 2002).

Here, the district court did not clearly err in determining that the government showed it was more likely than not that Magloire intended to commit a crime once he entered the apartment. The evidence showed that he put a substance over the neighbor's Ring camera, attempted to enter the apartment with a ski mask over his face, pushed against the door, and attempted to use a screwdriver to force entry.[4] Magloire also offered no explanation for why he was wearing a ski mask in the middle of the summer (instead he denied that he wore it at all, despite the Ring camera footage). Accordingly, the district court

---

[4] Magloire contested below that the Ring video footage did not show him attempting to shove open the door. However, since he does not make that argument on appeal, he abandons it. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (holding that arguments not raised on appeal are abandoned).

did not abuse its discretion in finding that the circumstances indicated Magloire more likely than not intended to commit a crime once inside the apartment.

The district court also did not clearly err in determining that the government showed it was more likely than not that no one gave him consent to enter the apartment.  While Magloire testified that he had consent to enter the apartment, the government proffered the Ring camera footage, which showed Magloire pushing into the apartment door, wearing a mask, using the screwdriver, and covering the Ring camera lens.  And the district court concluded that the video footage clearly showed that Magloire was attempting to break into the apartment, which undermined his consent argument.[5]  Therefore, the district court did not abuse its discretion in finding by a preponderance of the evidence that the government rebutted his consent defense.

## B.  Whether the district court abused its discretion in denying Magloire's request for a continuance

Magloire argues that the district court abused its discretion in denying his motion for a continuance because it precluded him from obtaining exculpatory testimony of Sabrina or Kamal that he had consent to enter the apartment.

---

[5] Notably, the owner of the apartment told the responding officers that Sabrina, who allegedly gave Magloire permission to enter the apartment, did not have permission to enter the apartment either.

We review a district court's denial of a motion for continuance for abuse of discretion. *United States v. Valladares*, 544 F.3d 1257, 1261 (11th Cir. 2008) Therefore, we will not overturn the denial of a continuance "unless the denial [was] arbitrary or unreasonable." *United States v. Davis*, 854 F.3d 1276, 1294 (11th Cir. 2017) (quotations omitted) (regarding a pre-trial continuance). In determining whether the district court abused its discretion in denying a continuance to obtain testimony, we consider:

> (1) the diligence of the moving party in obtaining the testimony; (2) the probability of obtaining the testimony within a reasonable time; (3) the specificity with which the defense was able to describe the witness's expected knowledge or testimony; and (4) the nature of the proffered testimony, that is, the degree to which such testimony was expected to be favorable to the accused, and the unique or cumulative nature of testimony.

*United States v. Khan*, 794 F.3d 1288, 1311 (11th Cir. 2015) (quotations omitted).[6]

---

[6] We have not addressed whether these factors apply to the denial of a continuance in a supervised release revocation proceeding, which does not carry the same rights due to a defendant during stages of a criminal prosecution. *See United States v. Dennis*, 26 F.4th 922, 927 (11th Cir. 2022) (explaining that because the revocation of supervised release is "not a stage of a criminal prosecution, the full panoply of rights due to a defendant in criminal prosecutions does not apply to revocations" of supervised release. (omission

14                    Opinion of the Court                    22-10439

Here, regarding the first *Khan* factor, Magloire did not demonstrate diligence in attempting to contact witnesses before the first revocation hearing.  He had notice of the hearing a week in advance and never attempted to contact any witnesses.  It is unclear whether the second *Khan* factor favors Magloire.  Although he claimed to be friends with Kamal and Sabrina and stated that they would appear as witnesses if he asked, he provided no reason why either were not present at the first revocation hearing and it is pure speculation that he would have been able to obtain their testimony in a reasonable time.  As for the third and fourth *Khan* factors, even assuming that they testified in Magloire's favor, Magloire's actions in the video footage were not consistent with someone who had consent to enter.  Rather, as the district court found, their testimony would not have made a difference given the clear video footage which showed Magloire's attempt to shove and pry open the door to apartment 2709 while wearing a ski mask over his face and then place a substance over the Ring camera lens to obscure the image.  Thus, the district court did not abuse its discretion in denying Magloire's motion for a continuance.

---

adopted) (quotation omitted)); *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994) (explaining that a defendant must be afforded "certain minimal due process requirements" during a revocation hearing).  Nevertheless, because the government asserts that these same factors apply in this case, we assume without deciding that they do.

### C. Whether Magloire's sentence is procedurally and substantively reasonable

Magloire argues that his sentence is procedurally and substantively unreasonable because the district court only considered one of the § 3553(a) factors in its decision.

We review a sentence's reasonableness for abuse of discretion, regardless of whether that sentence falls inside or outside of the guidelines range. *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also Vandergrift*, 754 F.3d at 1307 (applying abuse of discretion standard to a district court's revocation of supervised release). "The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

When imposing a sentence upon revocation of supervised release, the district court must consider certain § 3553(a) factors, including: the nature and circumstances of the offense; the defendant's history and characteristics; the sentences available, along with the relevant sentencing guidelines range, and any pertinent policy statements; the need to deter criminal conduct, protect the public, provide the defendant with training or other correctional treatment; and the need to avoid sentencing disparities between similarly situated defendants, and to provide for restitution. 18 U.S.C. §§ 3583(e)(3), 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7). The district court is not required to discuss each of the § 3553

factors or explicitly state that it considered each of the factors. *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013). Rather, the district court's acknowledgment that it considered the § 3553(a) factors is sufficient. *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007).

In reviewing the reasonableness of a sentence, we first consider whether the district court committed a procedural error, such as failing to calculate or improperly calculating the guidelines range. *Gall*, 552 U.S. at 51. We also ensure that the district court treated the guidelines as advisory, considered the § 3553(a) factors, did not select a sentence based on clearly erroneous facts, and adequately explained the sentence. *Id.* A district court that decides to vary upward from the guidelines range "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (quotations omitted). A district court is "free to consider any information relevant to [a defendant's] background, character, and conduct in imposing an upward variance." *United States v. Tome*, 611 F.3d 1371, 1379 (11th Cir. 2010) (quotations omitted). "[W]e must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 1378.

A sentence is substantively unreasonable only when the district court "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an

improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Rosales-Bruno*, 789 F.3d at 1256 (quotation marks omitted). We "commit[] to the sound discretion of the district court the weight to be accorded to each § 3553(a) factor," *United States v. Perkins*, 787 F.3d 1329, 1342 (11th Cir. 2015), and the district court is "permitted to attach great weight to one factor over others," *United States v. Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021) (quotations omitted).

We will vacate a district court's sentence "only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that is outside the range of reasonable sentences dictated by the facts of the case." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020) (quotations omitted).

Here, Magloire's sentence is not procedurally unreasonable. Magloire's contention that the district court only considered one of the § 3553(a) factors—the need to protect the public—is undermined by the record. The record establishes that the district court considered all of the relevant § 3553(a) factors, including the nature and circumstances of the offense, Magloire's personal history and characteristics, the guidelines range, and the need to deter future criminal conduct by Magloire and to protect the public. Furthermore, it sufficiently explained its decision for the upward variance—highlighting Magloire's criminal history,

past violations of supervised release, and the need to protect the public.

Finally, Magloire's argument that his sentence is not substantively unreasonable for the same reason—because the district court only relied on a single § 3553(a) factor—is not supported by the record. As discussed above, contrary to Magloire's assertion, the district court did not rely on the public safety § 3553(a) factor to the exclusion of all other factors, as it specifically referred to the facts of the underlying offense and Magloire's personal circumstances and statements. Although the district court may have weighed the public safety factor more heavily, this does not render Magloire's sentence substantively unreasonable. *See Riley*, 995 F.3d at 1279. Accordingly, we conclude that Magloire's sentence is procedurally and substantively reasonable.

**AFFIRMED.**