[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-10199

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

AYODELE ELIJAH ABOLARINWA,
a.k.a. Ayodele Oladapo Abolarinwa,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cr-00028-KD-4

_____

Before JILL PRYOR, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Ayodele Elijah Abolarinwa appeals following his conviction by a jury for conspiracy to commit wire fraud related to the filing of fraudulent unemployment claims. Abolarinwa raises challenges to the racial composition of the *venire*, the government's use of peremptory strikes, and the denial of his request to strike a prospective juror for cause. After careful review, we affirm.

## I.    Background

A federal grand jury in the Southern District of Alabama charged Abolarinwa, among other co-conspirators, with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343 by filing fraudulent unemployment claims using stolen personal identifying information belonging to other individuals.

Initially, jury selection was set to begin on August 1, 2022, but on that day, although counsel for both sides were present, Abolarinwa, who was out on bond, was not present because of transportation issues with the bus he took from his home in Virginia to Alabama. So the district court dismissed the initial jury venire and continued the case until September 2022.

Jury selection and *voir dire* began on September 6, 2022. The forty-seven person venire was randomly generated by a computer and composed of individuals who resided within the counties that make up the Southern District of Alabama in accordance with the

23-10199                 Opinion of the Court                 3

district's jury plan. *See Plan for the Qualification and Random Selection of Grand and Petit Jurors* (August 24, 2009), available at https://perma.cc/LXR4-XG94.    Thirty-nine of the venire members were white, seven were black, and one was hispanic.

During *voir dire*, Abolarinwa, through counsel, stated that, while he did not "know when would be the proper time" to raise it, he wanted to "put an objection on the record [to] the make-up of the jury," because there were only seven black people in the venire, one of whom "either [did not] show [up] or was excused." The district court overruled the objection, concluding that Abolarinwa did not "meet [his] burden" and noting that, the "jury was picked by a computer, and there [were] . . . four people excused prior to coming today," and the court was unaware of the excused jurors' races.    Abolarinwa stated that one of those excused individuals was black, but that he did not know why that person was excused.  The district court then noted that the "panel would have been made up of the same people based on the computer's generation" and that the "computer ha[d] been approved by the [Judicial Council for the] Eleventh Circuit."[1]

---

[1] The Jury Selection and Service Act, 28 U.S.C. § 1861, "seeks to ensure that potential grand and petit jurors are selected at random from a representative cross section of the community and that all qualified citizens have the opportunity to be considered for service." *United States v. Bearden*, 659 F.2d 590, 593 (5th Cir. 1981).  "The Act provides that each district court shall devise a written plan, known as a 'local plan,' to achieve the twin objectives of nondiscrimination and opportunity of service.  The plan must be approved by

At Abolarinwa's request, the district court explained to the venire that Abolarinwa was not a natural born citizen and that "[s]ome of the acts alleged in [the] indictment [were] alleged to have been committed by people who are not U.S. citizens." The district court then asked, as requested by Abolarinwa, whether any members of the venire had "any opinions about immigration that would affect [their] ability to be fair and impartial in this case to the defendant who is not a natural-born citizen." Juror No. 3 indicated that he would. Upon further questioning in a sidebar conference, Juror No. 3 explained that his answer "depends on whether or not it's legal or illegal immigration." The district court explained that Abolarinwa was "a permanent resident" so it was "legal" immigration. Juror No. 3 stated: "Okay. That's all that matters, legal or illegal," and he confirmed that he would not have any problem being fair or impartial to Abolarinwa. As a follow-up question, the government then asked Juror No. 3 if he would be "able to put aside the fact that [potential witnesses were] here illegally and listen to what they say in their testimony and evaluate that separately from [his] beliefs." Juror No. 3 stated "[p]robably not."

After questioning, Abolarinwa moved to strike Juror No. 3 for cause based on his "strong . . . opinions" concerning

---

the judicial council of the circuit in which the district is located." *Id.* at 593–94.

23-10199                Opinion of the Court                5

immigrants.[2]  The government objected, arguing that Juror No. 3 stated he could be fair, and although he expressed trouble with "believing illegal immigrants," the government thought it was unlikely to call any illegal immigrants at trial.  The district court denied the strike for cause, noting that Juror No. 3 "seem[ed] totally fine" with legal immigrants and Abolarinwa "is legal." Ultimately, Juror No. 3 was not seated on the jury.

The parties then addressed peremptory strikes.[3]  As relevant here, the government sought to strike Juror No. 21, a black male. The following colloquy then occurred:

> [Defense Counsel]: Your Honor, I object to No. 21. We are down to two black people in the venire with the numbers down to—for the original pool, strike pool.  No. 21, to my knowledge, didn't answer any questions, and, you know, I believe it would be a *Batson*[4] issue.  Like I said, we are down to two out of the entire pool with the numbers that we have.

---

[2] Abolarinwa also moved to strike Juror No. 44 for cause and the government agreed.  The government separately moved to excuse Juror No. 37 for cause, and Abolarinwa had no objection.

[3] It appears from the transcript that the peremptory strikes were not discussed on the record unless there was an objection.  However, the "strike lists" in the record show that the government sought to use peremptory strikes against Jurors No. 9 (white), 21 (black), and 28 (white).  Abolarinwa sought to strike Jurors No. 3, 4, 10, 15, 18, 20, 22, 30, 11, 8, and 33 (all of whom were white).

[4] *Batson v. Kentucky*, 476 U.S. 79 (1986).

THE COURT: Of the pool that you've been given.

[Defense Counsel]: Yes, ma'am

THE COURT: So –

[Government Counsel]: Two I want to strike.

THE COURT: I don't believe you've made your case. Would you like to state it for the record.

[Government Counsel]:  21 is not employed.  He has never been employed.  He is not collecting unemployment insurance.[5]  That's the same reason we struck No. 28,[6] who is also unemployed, not collecting unemployment insurance.  In addition, with regard to 21, he has a previous arrest for forgery.

THE COURT:  Those are race-neutral reasons.  I find that's a race-neutral reason.

[Defense Counsel]: Thank you, Your Honor.

---

[5] Juror No. 21 indicated on his questionnaire that he was age 45; black; currently unemployed; not retired; that he had previously received or applied for Social Security benefits; and that he had not been arrested or charged with any prior criminal offenses.  He left the section asking about his previous occupations blank.

[6] Juror No. 28 indicated on his questionnaire that he was age 28; white; currently unemployed; not retired; had never applied for any of the specified government benefits listed on the questionnaire; and had not been arrested or charged with any prior offenses.

The court then announced the jury, which consisted of two black jurors (Jurors No. 7 and 23), one hispanic juror (Juror No. 5), nine white jurors (Jurors No. 2, 6, 12, 13, 14, 16, 17, 24, 25), and an alternate black juror, (Juror No. 34) and one alternate white juror, (Juror No. 32).

Following the trial,[7] the jury found Abolarinwa guilty, and the district court sentenced him to 46 months' imprisonment to be followed by three years' supervised release. Abolarinwa appealed.[8]

## II.    Discussion

Abolarinwa argues that (A) the racial composition of the venire violated federal law; (B) the district court erred in overruling his *Batson* objection to the government's use of a peremptory strike against Juror No. 21; and (C) the district court erred in denying his

---

[7] Because all of Abolarinwa's challenges to his conviction center on jury selection, that underlying facts of the crime and evidence adduced at trial are not relevant to this appeal and will not be discussed.

[8] Abolarinwa dedicates a section of his brief to the timeliness of his appeal. However, the government agrees that the appeal is timely. Therefore, any challenge to the timeliness of the appeal is waived. *See United States v. Lopez*, 562 F.3d 1309, 1313 (11th Cir. 2009) (explaining that the deadline for filing a notice of appeal in a criminal case is not jurisdictional but rather is a claims-processing rule that may be waived by the government).

request to strike Juror No. 3 for cause.  We address each argument in turn.

### A.  Racial composition of the venire

Abolarinwa contends that the total population of the five counties from which the venire was comprised was 736,371, with the black population for those counties totaling 201,174, or 27.3%. But he asserts that black venire members made up less than 15% of the venire, which equates to a 12.3% disparity and is statistical evidence of unlawful racial disparity.  Notably, he does not specify in his counseled brief whether he is bringing his challenge to the composition of the venire under the Sixth Amendment or the Fifth Amendment to the Constitution or the Jury Selection and Service Act, 28 U.S.C. § 1861—indeed he cites none of these authorities in his brief.  *See United States v. Grisham*, 63 F.3d 1074, 1077 (11th Cir. 1995) ("Challenges to the jury selection process may be based on the fair cross-section requirement of the Sixth Amendment, the equal protection component of the Fifth Amendment, or a substantial failure to comply with the provisions of the [Jury Selection and Service] Act." (internal citations omitted)).  Nor did he specify in the district court under which of these authorities he based his claim.   We note that it is the defendant's responsibility to specify the basis for his objection, including on what authority the objection is based, so that the district court can have the opportunity in the first instance to address the alleged issue and correct it to avoid wasting scare judicial resources.  *See United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) ("To preserve an issue

for appeal, one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought. The objection must be raised in such clear and simple language that the trial court may not misunderstand it." (quotations and internal citation omitted)); *United States v. Gallo-Chamorro*, 48 F.3d 502, 507 (11th Cir. 1995) ("To preserve an issue for appeal, a general objection or an objection on other grounds will not suffice."); *United States v. Kennedy*, 548 F.2d 608, 612–14 (5th Cir. 1977)[9] (holding that defendant forfeited his challenge under the Jury Selection Service Act by failing to properly preserve the issue for appeal). Regardless, even if Abolarinwa had properly preserved his challenge, he is not entitled to relief on any of these grounds.

"The Sixth Amendment to the Constitution grants every criminal defendant the right to a speedy and public trial, by an impartial jury. The Supreme Court has interpreted this right to mean, among other things, that a petit jury venire must represent a fair cross section of its community." *United States v. Perez-Hernandez*, 672 F.2d 1380, 1384 (11th Cir. 1982) (quotations omitted).

> To establish a prima facie violation of the fair cross-section requirement, a defendant must show:

---

[9] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all decisions from the Fifth Circuit Court of Appeals issued prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

(1) that the group alleged to be excluded is a distinctive group in the community, (2) that representation of the group in venires is not fair and reasonable in relation to the number of such persons in the community, and (3) that the underrepresentation is due to systemic exclusion of the group in the jury-selection process.

*United States v. Davis*, 854 F.3d 1276, 1295 (11th Cir. 2017) (quotations omitted).[10]  Importantly, when a defendant fails to establish any one of these three elements, his claim under the Sixth Amendment fails.  *United States v. Pepe*, 747 F.2d 632, 649 (11th Cir. 1984).

Abolarinwa has failed to satisfy the third element which requires him to show that the jury "selection procedure . . . is susceptible of abuse or is not racially neutral . . . ." *Castaneda v. Partida*, 430 U.S. 482, 494 (1977); *Gibson v. Zant*, 705 F.2d 1543, 1546

---

[10] For purposes of the second element, we determine whether a given race was fairly and reasonably represented in the venire by "compar[ing] the difference between the percentage of [the relevant distinctive racial group] in the population eligible for jury service and the percentage of [that group] in the [jury] pool." *Davis*, 854 F.3d at 1295. "[I]f the absolute disparity between these two percentages is ten percent or less, the second element is not satisfied." *Id*.  Here, the parties dispute the relevant statistics.  Abolarinwa argues that when the relevant black population is compared with the number of black venire members, the disparity is 12.3 percent.  Meanwhile, the government argues that Abolarinwa's statistical analysis is flawed and that the disparity between the relevant population and the number of black venire members was only 10%, meaning that Abolarinwa's claim fails as a matter of law.  We need not resolve this dispute because, as we discuss further in this opinion, Abolarinwa cannot satisfy the third element.

(11th Cir. 1983) (same).  There is no suggestion—either in his brief or before the district court—that the Southern District of Alabama's Jury Plan, which uses a computer generated randomized process to generate the venire, was not racially neutral or was susceptible to abuse as a tool of discrimination.  Rather, Abolarinwa states simply that the alleged 12.3% racial disparity in this case "cannot be waved off by pointing to a computer program."  That assertion is not sufficient to meet Abolarinwa's burden of pointing to evidence tending to show that the "selection procedure . . . is susceptible of abuse or is not racially neutral." *Castaneda*, 430 U.S. at 494; *see also Berghuis v. Smith*, 559 U.S. 314, 332–33 (2010) (emphasizing that the defendant bears the burden to prove the third element as part of the *prima facie* case and generally must point to more than statistical evidence tending to show a disparity).

Abolarinwa's claim fails under the Fifth Amendment for the same reason.

> To establish an equal protection violation in the jury selection context, the defendant must show (1) that he or she is a member of a group capable of being singled out for discriminatory treatment; (2) that members of this group were substantially underrepresented on the venire; and (3) that the venire was selected under a practice providing an opportunity for discrimination.

*Davis*, 854 F.3d at 1295.  Abolarinwa fails to identify anything about the jury selection process that provides an opportunity for

discrimination. *See id.* at 1296 (explaining that to satisfy the third element, the defendant must identify something "about the jury selection process that could be considered not racially neutral or susceptible to abuse as a tool of discrimination" (quotations omitted)).

Finally, Abolarinwa has forfeited any challenge under the Jury Selection Service Act because he failed to comply with the statutory procedural mechanisms for preserving such a claim. *See* 28 U.S.C. § 1867(d) (requiring the defendant to file a written motion "containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with [the Act]"); *id.* § 1867(e) (providing that "[t]he procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime . . . may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title"); *see also Kennedy*, 548 F.2d at 612–14 (holding that, although there was a violation of the Jury Selection Service Act, the defendant was not entitled to relief because he forfeited the claim by making only an oral objection and failing to comply with the formal procedural requirements); *United States v. Paradies*, 98 F.3d 1266, 1278 (11th Cir. 1996) ("The Act requires that any motion filed pursuant thereto be accompanied by a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of [the Act]. When that requirement is not satisfied, the challenge to the selection process must fail . . . ." (alteration in original) (internal citation and quotations omitted)).

Accordingly, Abolarinwa is not entitled to relief under the Sixth Amendment, the Fifth Amendment, or the Jury Selection and Service Act.

### B. Batson *Challenge*

Abolarinwa argues that the government's use of peremptory strikes disproportionately targeted the black venire members in violation of *Batson*. And he maintains that the government's proffered race-neutral reasons were a pretext for unlawful discrimination because there were "meaningful differences" between the prospective black juror that the government struck and the prospective white juror that the government asserted it struck for similar reasons.[11]

"The Supreme Court in *Batson* established the now-familiar three-part inquiry for evaluating whether a peremptory strike was motivated by racial or ethnic discrimination." *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1038 (11th Cir. 2005) (citing *Batson*, 476 U.S. at 79). First, "the district court must determine whether the party challenging the peremptory strikes has established a prima facie case of discrimination by establishing facts sufficient to support an inference of racial discrimination." *Id.* (quotations omitted). If the challenger has established a prima facie case, "the

---

[11] The government argues that Abolarinwa has forfeited many of the arguments he makes on appeal in support of his *Batson* claim because they extend beyond the legal grounds he presented to the district court. We conclude that we need not address this issue because, even considering Abolarinwa's arguments, he is not entitled to relief on his *Batson* claim.

burden then shifts at step two to the striker to articulate a race-neutral explanation for the challenged strike." *Id.* Finally, at step three, the district court must determine whether the striker's "stated reasons were the actual reasons or instead were a pretext for discrimination." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2241 (2019). Importantly, "the ultimate burden of persuasion rests with, and never shifts from, the opponent of the strike." *Ochoa-Vasquez*, 428 F.3d at 1038 (quotations omitted).

Step two under *Batson* merely requires an explanation for the strike that is legitimate, reasonably specific, and facially nondiscriminatory. *United States v. Folk*, 754 F.3d 905, 914 (11th Cir. 2014); *United States v. Alston*, 895 F.2d 1362, 1366 (11th Cir. 1990). The district court must then at step three "assess the plausibility of that reason in light of all evidence with a bearing on it." *Miller El v. Dretke*, 545 U.S. 231, 252 (2005); *Rice v. Collins*, 546 U.S. 333, 338 (2006) ("Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor." (internal citation omitted) (quotations omitted)). In other words, at the third step, "the decisive question will be whether counsel's race-neutral explanation . . . should be believed. This is a pure issue of fact, subject to review under a deferential standard . . . [and] peculiarly within a trial judge's province." *McNair v. Campbell*, 416 F.3d 1291, 1310 (11th Cir. 2005) (alterations in original) (internal citation omitted).

"When reviewing the district court's ruling on *Batson* challenges, the court's determination is entitled to great deference, and must be sustained unless it is clearly erroneous." *United States v. Robertson*, 736 F.3d 1317, 1324 (11th Cir. 2013) (quotations omitted); *see also Flowers*, 139 S. Ct. at 2244 (emphasizing review of the trial court's factual determinations on a *Batson* claim is "highly deferential" and the "trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous" (quotations omitted)).

Here, it appears that the district court assumed that Abolarinwa had made out a *prima facie* case of racial discrimination at step one because upon Abolarinwa's objection to the striking of Juror No. 21, the court invited the government to state its reasons for striking Juror No. 21. The government explained that it struck Juror No. 21 because he was unemployed, had never had a job, and was not collecting unemployment benefits, which were the same reasons that the government struck a white juror (No. 28). The government also asserted that Juror No. 21 had a prior arrest for forgery. The district court then concluded that these were legitimate, race-neutral reasons.

Abolarinwa has not shown that the district court's decision was clearly erroneous. Although he quarrels with the government's statement that Juror No. 21 never worked—highlighting that the juror did not affirmatively state that he had never worked, but instead simply left the prior employer section of his questionnaire blank—it was not unreasonable for the

government to conclude based on the blank prior employment section that Juror No. 21 had not worked before. Nor was it clearly erroneous for the district court to accept this reason as a legitimate non-pretextual reason for striking Juror No. 21 given that the case was about unemployment benefits.[12] *Robertson*, 736 F.3d at 1324; *United States v. Walker*, 490 F.3d 1282, 1291 (11th Cir. 2007) ("Once past the *prima facie* step, the district court's determination concerning the actual motivation behind each challenged strike

---

[12] With regard to the government's second proffered reason for the strike, for the first time on appeal, Abolarinwa points out that the "Government also incorrectly stated that" Juror No. 21 had a prior criminal arrest, pointing to the jury questionnaire where he indicated that he had never been arrested. To the extent that Abolarinwa contends that this incorrect statement constitutes evidence that the government's proffered reasons were pretextual, we disagree. First, we note that Abolarinwa never raised this objection in the district court, which would have afforded the government an opportunity to explain on what information it based this statement or otherwise correct the record. Second, while the court may have erred in crediting the prior criminal arrest record reason, ultimately there is nothing in the record suggesting that the true reason for striking Juror No. 21 was race, especially given the validity of the government's unemployment-based reason. And there was no evidence that the government exercised a pattern of peremptory strikes against black venire members—it used only three of its six peremptory strikes to strike two white jurors and one black juror. Furthermore, a total of three black jurors were empaneled on the fourteen person jury, although one served as an alternate. Thus, there is no evidence that the government unlawfully struck jurors based on race. *Hernandez v. New York*, 500 U.S. 352, 359 (1991) (explaining when evaluating a *Batson* claim that "[d]iscriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." (ellipses in original) (quotations omitted)).

23-10199               Opinion of the Court                17

amounts to pure factfinding, and we will reverse only if the decision is clearly erroneous.").

### C. Denial of request to strike Juror No. 3 for cause

Abolarinwa argues that the district court erred in denying his request to strike Juror No. 3 for cause based on Juror No. 3's expressed views on immigration.

We review a district court's decision whether to excuse a prospective juror for cause for an abuse of discretion.[13] *United States v. Pendergrass*, 995 F.3d 858, 871 (11th Cir. 2021). "[T]he abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc) (quotations omitted). "We have recognized that there are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion than in ruling on

---

[13] The government argues that we should review this claim for plain error because on appeal Abolarinwa asserts for the first time that Juror No. 3 should have been struck for cause based on his views "towards illegal immigrants" because it was unclear whether Juror No. 3 "would conclude that [Abolarinwa's] circumstances (marrying an American only for her to divorce him a few years later) made [Abolarinwa] 'illegal' in [Juror No. 3's] eyes." While we agree that Abolarinwa did not make this exact cause argument below instead relying on a general concern with Juror No. 3's "pretty strong" opinions concerning illegal immigrants, we need not resolve whether plain error should apply to his claim on appeal because he is not entitled to relief under the traditional abuse of discretion standard.

challenges for cause in empaneling of a jury." *Davis*, 854 F.3d at 1296 (quotations omitted).

Here, following initial and rehabilitative questioning of Juror No. 3, the district court declined to excuse him for cause because he confirmed that he could be fair and impartial to Abolarinwa. Based on Juror No. 3's answers to the questioning and affirmation that he could be fair and impartial we cannot say the district court abused its discretion. *Frazier*, 387 F.3d at 1259 (recognizing that "the abuse of discretion standard allows for a range of choice" and "there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call" (quotations omitted)). Moreover, Abolarinwa does not argue that he suffered any harm due to the denial of his cause challenge—and he would be hard pressed to do so because Juror No. 3 was not seated on his jury. Therefore, his claim must fail. *Davis*, 854 F.3d at 1296 (concluding that the defendant's claim failed because, among other reasons, he failed to show "that he suffered any harm due to the court's denial of his for-cause challenge).

## III.    Conclusion

For the above reasons, Abolarinwa is not entitled to relief on any of his claims. Accordingly, we affirm his conviction.

**AFFIRMED.**